JAMES SALTER *v.* DANIEL H. HAM and OBADIAH HOLMES, impleaded with others.

Where the plaintiff files his complaint alleging a partnership, and asking for an accounting by the defendant, if he does not establish the existence of the partnership, he will not be entitled to the accounting.

The mere relation of creditor of the defendant is not, of itself, sufficient to entitle the plaintiff to an accounting.

Whether two or more persons associating in business, are partners, as between themselves, depends upon their intentions, as legally ascertained.

APPEAL from judgment of Supreme Court. The action was by the plaintiff, claiming to be a copartner with the defendant Ham in manufacturing and vending a medicine called "Dr. Ham's Invigorating Spirit, or Dyspepsia Remedy," for an accounting in respect to the copartnership business.

The complaint alleged that in December, 1855, Ham was carrying on the business in the city of New York, and that about that time the plaintiff entered into an agreement in writing with him, as follows:

"This agreement, made, entered into and concluded, on 11th December, 1855, by and between D. H. Ham, of the first part, and James Salter, of the other part, witnesseth: That whereas the said Ham is the discoverer and manufacturer of a certain medicine known and called 'Dr. Ham's Invigorating Spirit;' and whereas the said Ham has not sufficient means to manufacture the same in quantities sufficient to meet the public demand: now, therefore, the said Salter agrees to loan and advance to the said Ham the sum of $500, for the term of one year from the date hereof, in the manner following: The sum of $200 at the time of signing this agreement, and the further sum of $300 on or before the 1st day of March next; to secure the payment of which, said Ham has assigned, transferred and set over, and by these presents does assign, transfer and set over to the said Salter all and singular the bills and receipts enumerated and set forth in the schedule hereunto annexed, marked A; hereby constituting and appointing the said James Salter his true

and lawful attorney, with full power to collect, adjust and settle the same. The said Salter agrees that he will pay over to the said Ham all moneys collected on said bills or receipts as fast as he shall receive the same, the said Ham giving to him new receipts for the amount so paid over to the said Ham. And the said Ham, in consideration of the said loan of $500, agrees to invest the said sum in spirits and articles necessary to manufacture the said Invigorating Spirit, and to manufacture and put the same on sale, and to pay over to the said Salter one-fourth part of the net profits arising from the sale and manufacture of said article, after deducting all expenses attending the manufacture and sale of the same. It is agreed between the parties that the said Ham shall have the right at any time to sell out said business upon paying to the said Salter the said sum of $500 and dividing the profits as aforesaid. It is agreed by the parties that a regular set of books shall be kept by the said Ham, in which shall be set down all purchases made and all sales effected, as well as all articles sent out to be sold on commission, and that the said Salter shall at all times have free access to the same. It is further agreed by and between the parties that if said Ham shall desire to sell out said business at any time during this agreement, he shall give to the said Salter the first privilege of purchasing the same, at as low a price and on as favorable terms as he would sell the same to any one else. And it is further agreed between the parties that said Salter shall receive one-fourth of the profits as aforesaid so long as the said Ham shall continue to manufacture the same, or until he shall sell out said business."

The complaint then alleged the payment to Ham, on or about the 1st February, 1856, of the $500, in compliance with the agreement; that the plaintiff permitted Ham to take all moneys collected on the bills and receipts assigned to plaintiff by Ham, as fast as they were collected; that Ham did not keep any proper account books; that he received all moneys collected in the business, and kept such loose and unintelligible entries thereof that the plaintiff has never been able, and is not now able, to tell what amount of moneys have

been collected, nor how the affairs of said business have all along stood or now stand; that a large amount of profits was realized during the existence of said agreement, but what amount the plaintiff is unable to tell or ascertain; that Ham refuses to give any account of such profits, and has never paid said profits or advances or any part thereof to plaintiff and that the plaintiff and said Ham acted under said agreement from the execution thereof until on or about the 11th February, 1856.

The complaint then further averred, that on or about the 11th February, 1856, Ham promised the plaintiff that he should have a half interest in said business in the profits and property thereof, and represented that he considered him having an interest in it to that extent; and that in consideration thereof, the plaintiff at various times between the 11th of February, 1856, and 5th of August, 1861, advanced to Ham to be used in said business various sums of money amounting in the aggregate to $2,000, on which advances he has received back the sum of $493 in all; that as an inducement to make said advances Ham made said representations and promises to plaintiff as aforesaid; that the plaintiff has never been able to ascertain what moneys have been collected or received from persons owing or indebted to the firm and business, or how the affairs of said business stand, or what profits have been realized; that Ham now holds good claims against responsible debtors to the firm, amounting in the aggregate to the sum of $15,000 or $20,000; that said Ham wholly refuses to account to the plaintiff in said partnership affairs, or to pay the share of profits belonging to him or any part thereof; that the plaintiff and Ham carried on the business as aforesaid from 11th of February, 1856, until 10th of January, 1862, when a fire occurred and destroyed a great part of the property of the firm, from which time it has ceased to carry on the business; that the firm holds two policies of insurance on said property, one of $2,000 in the St. Marks Fire Insurance Company, and another for the same amount in the Relief Fire Insurance Company, on which the firm will be legally entitled to the full amounts by reason of

said fire; that plaintiff has requested Ham to let him hold one of said policies, which he refuses to do; that the plaintiff holds nothing of the firm property except receipts of agents, amounting to about $2,000, which he holds as security for the money advanced under the written agreement, but what can be realized on the same he knows not; that Ham now refuses to account or recognize the plaintiff as having any interest with him in said business, and collects all moneys due to said business and firm, and holds all the evidences of indebtedness as aforesaid; that Ham is endeavoring to obtain the whole of said money, both from the ordinary debtors to the firm, and the money due on the said policies, and all the firm property, and detain the share of the plaintiff from him and defraud him out of the same; that the defendant Holmes claims some interest in said partnership, by reason of some alleged agreement for moneys, he alleges, he advanced to said Ham, but said plaintiff never authorized said agreement and does not know of the same.

The judgment demanded was that the defendant Ham account to plaintiff; that the defendants be enjoined from interfering with the partnership property; that a receiver be appointed, and that Holmes' interest, if any, be adjudicated in the suit.

The defendant Ham answered, admitting the making of the agreement of 11th December, 1855, and the loan therein mentioned; and averred that to secure said loan he transferred to plaintiff the bills and receipts mentioned in the complaint; that such bills and receipts were collected by the plaintiff and his agent, and they amounted to over the sum of $500. He denied making any contract with the plaintiff other than the written agreement. He further denied ever making any agreement with the plaintiff upon the subject of admitting, or to admit him as a copartner with the defendant in the said business, or giving him a share or interest therein, or in the property, proceeds or profits thereof, as a copartner. He alleged that he conducted the business himself under the name of D. H. Ham & Co., without reference to the plaintiff, and under an arrangement with the

defendant Holmes; that the plaintiff's office was in the same building with his own, and that various sums of money have passed from time to time between the defendant and the plaintiff as loans and repayments; the plaintiff, as a neighborly act, occasionally lending money to the defendant, and in each instance the defendant soon thereafter repaying the same, and that all such occasional loans were fully paid to plaintiff.

The defendant Holmes also answered, alleging that he was a copartner with Ham; that he owns and is entitled to the one-half part of the property, things in action and effects of the firm of D. H. Ham & Co., and of its business; and that he did not know that the plaintiff had the claim or interest set forth in his complaint. As to all the matters mentioned and set forth in the plaintiff's complaint, he has no knowledge or information thereof sufficient to form a belief, and he therefore controverts the same.

The case was referred to Philo T. Ruggles, Esq., to hear and determine the issues joined therein, including the taking and stating of all necessary accounts. The referee found as facts: ·

That the defendant Daniel H. Ham carried on the business in the complaint in the action mentioned, during the time therein stated, under the name and style of D. H. Ham & Co., and that during part of that time the defendant Obadiah Holmes was a copartner therein.

That the plaintiff and defendant Ham entered into the written agreement bearing date December 11, 1855, mentioned in the complaint in this action, a copy of which is therein correctly set forth.

That the plaintiff paid to said Ham the sum of $500, in compliance with said agreement.

That the verbal agreement set up in said complaint, to the effect that the said plaintiff should have one-half of or any share in the profits of the said business, was not made, nor was there any agreement or understanding by or between the plaintiff and the defendant Daniel H. Ham that the plaintiff should become a member of the said firm, or be a partner

with said defendant in said business, or have any interest therein as such; nor did the said plaintiff act as such co-partner.

That there was no agreement or understanding by or between the said parties to the effect that the plaintiff should have any interest in the two policies of insurance in the said complaint stated, or in the property, stock or money of the said firm in the said complaint referred to, and in respect to which an accounting is claimed.

The referee found and decided, as matter of law, that the said written agreement is not such as constitutes the plaintiff a copartner with the defendant Ham; that the said plaintiff was not a copartner of or with the said Daniel H. Ham, or a member of the firm of D. H. Ham & Co., and that he is not entitled to an accounting in respect to the matters in the said complaint stated and set forth; that it does not become necessary in this action to determine the relative rights and claims of the defendants Ham and Holmes touching the matters aforesaid.

And the referee further found and decided, as matter of law, that the defendants Ham and Holmes were entitled to judgment against the plaintiff for their costs in the action.

Judgment being entered at the Special Term in conformity with the report of the referee, the same was affirmed at a General Term of the Supreme Court. From this judgment of affirmance, the plaintiff appeals to this court.

*C. N. Black*, for the appellant.

*Joseph Neilson*, for the respondents.

Wright, J. To entitle the plaintiff to have an account and distribution of the property, stock and money referred to in his complaint, the relation of partners must have existed between himself and the defendant Ham during the time therein stated. If he was not such partner, or a member of the firm of D. H. Ham & Co., he had no right to an accounting in respect to the business and property of Ham or of such firm. The preliminary question then was, whether,

from December, 1855, to January, 1862, the plaintiff and Ham were partners, *inter sese*, in the business of manufacturing and vending the drug or medicine called "Dr. Ham's Invigorating Spirit."

The facts found negative the existence of any partnership between the parties, unless it were constituted by the written instrument of December, 1855. Ham is found to have carried on the business himself during the period for which an accounting was claimed, except that for a part of the time the defendant Holmes was a copartner with him. The verbal agreement set up in the complaint as having been made in February, 1856, to the effect that the plaintiff was to have one-half, or any share, in the profits of the business, the referee finds, was not made, nor was there any agreement or understanding between the plaintiff and Ham that the former should become a member of the firm of D. H. Ham & Co., or be a partner with the latter in the business, or have any interest therein as such; nor did he act as such copartner. The plaintiff is, therefore, driven to rely upon the writing of December, 1855, as constituting him a partner with Ham, not only whilst the agreement was acted under by the partners (which, it is alleged in the complaint, was about two months), but also down to January, 1862, when the fire occurred which destroyed the manufacturing establishment.

Whether two or more persons are partners, as between themselves, is determinable chiefly by a reference to their own intention. Now, what was intended by the agreement of December, 1855? Was it that the plaintiff, by loaning to Ham the sum of $500 to purchase materials for manufacturing his medicines, should become a partner indefinitely in the general or future business? Such intention, I think, cannot be inferred from the terms of the agreement, construed in the light of the surrounding circumstances and conceded facts. Ham was manufacturing his medicine, and had agents engaged in vending it in this and other States. The plaintiff agrees to loan him $500 for one year, and, as security therefor, he assigns bills and accounts against his agents for more than the amount of the loan, and at the same time stipulates to

invest the sum in articles necessary to manufacture the medicine, and to manufacture and put the same on sale, and pay over to the plaintiff one-quarter of the net profits arising from such manufacture and sale. The plaintiff advanced the money about the 1st February, 1856, and it is admitted in the complaint that the parties acted under this contract from the execution thereof until about the 11th February, 1856 (a period of two months), when it seems to have been abandoned. There were other provisions of the writing, indicating that Ham was to solely carry on the business. He might sell it out any time during the year for which the credit was to run, upon paying the plaintiff his $500 and one-fourth of the profits, if any, arising from the sale of the medicine to be made from ingredients purchased with that money; and if he chose to sell out, he was to give the plaintiff the first privilege of purchasing, at as low a price and on as favorable terms as he would sell the same to any one else.

This agreement, I think, cannot be construed to create a partnership even in respect to the specific medicine manufactured from the ingredients to be purchased with the $500 advanced; and certainly it was not intended that the covenant should reach the general or future business, or the fruits of other money to be used or invested. It was a mere arrangement for a loan, upon security for a fixed period, with profits by way of interest. It did not impose upon the plaintiff the duties or clothe him with the powers of a partner. There was no joint ownership of the partnership funds according to the intention of the parties. The $500 loaned under the agreement was not a contribution to the capital of the firm as such; nor was it put into the business at the risk of the business. The plaintiff was, in no event, to participate in the losses of the adventure. With respect to third persons, Salter might be held to be a partner in the particular transaction, but as between himself and Ham the relation was that of creditor and debtor. Salter loans to Ham five hundred dollars for a term, upon security, and by way of indemnity for the use of the money it is agreed that it shall be invested in ingredients for manufacturing the Invigorating

Spirit (a business which Ham was then carrying on), and upon the manufacture and sale of the article, if any profits accrued over and above the expenses of manufacturing and selling, Salter was to receive one-fourth of such profits. This seems to me to be the obvious intent and meaning of the agreement. Neither in terms or by implication is any partnership relation created as between themselves.

But if the agreement contemplated a partnership in respect to so much of the medicine as should be manufactured and sold from the investment of the $500, there would be no reason for holding that the judgment of the court below was erroneous. It was not claimed or suggested that there should be an accounting as to this stale transaction. Indeed, it is plain that there could have been no profits growing out of it, as the thing was abandoned eleven days after the money was advanced. But there is still another answer. The action was not in respect to the written agreement, but to obtain, upon a proper administration of the copartnership estate of D. H. Ham & Co., the plaintiff's constituent portion of the assets, as a member of the firm, remaining after the fire in January, 1862. It was the ordinary action by a partner in reference to such estate; hence Holmes and the insurance companies were made parties. The action was tried and treated throughout upon that theory, the plaintiff seeking as preliminary to the relief sought to establish the partnership, and the written agreement was only used, or attempted to be used, as a piece of evidence on that issue. It was not founded upon the covenant of December, 1855, nor was any accounting claimed or proposed before the referee in respect to such covenant alone.

As, therefore, the plaintiff was not Ham's partner, or a member of the firm of D. H. Ham & Co., or had any interest in the property which was the subject of the action, save possibly as a creditor, he had no right to an accounting, and his complaint was properly dismissed.

The judgment of the Supreme Court should be affirmed.

All the judges concurring,

Judgment affirmed.