### HAYWARD *v.* BARRON.

(*Common Pleas of New York City and County, General Term.* June 6, 1892.)

PARTNERSHIP—WHAT CONSTITUTES—COMMUNITY OF PROFITS.

　　Where one, with no intention of entering into a copartnership, agrees to allow another a share in the profits of a business as compensation for his services as an employe, and the latter is not to share in the losses, there is no copartnership.

Appeal from equity term.

Action by Edward A. Hayward against Samuel H. Barron for the dissolution of a copartnership, and an accounting. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

Argued before BOOKSTAVER and PRYOR, JJ.

*Charles Strauss,* for appellant. *Willis M. Tyler,* for respondent.

BOOKSTAVER, J. This action was brought for the purpose of securing the dissolution of an alleged copartnership, and an accounting and division of the property. The complaint alleged that the plaintiff and defendant formed a copartnership on the 20th June, 1891; that they owned a large stock of goods, a lease of the premises wherein the business was carried on, and other assets; that no equitable division could be made without loss; and that on or about the 2d July, 1891, defendant took exclusive possession of the copartnership property and business, and excluded plaintiff therefrom,—and prayed judgment that the copartnership be dissolved, a receiver appointed, and the property sold, etc. The answer was a general denial. On the trial the learned judge found that the plaintiff and defendant were at no time copartners in the business at No. 32 Broadway, New York city, or elsewhere; that the plaintiff was simply an employe of the defendant, acting as cashier and manager of the defendant's business for a salary of $20 per week; that the agreement and understanding between the parties was that after certain indebtedness against the business had been paid off by the defendant the plaintiff was to receive a share of the profits only of said business, the same to be given as compensation for services to be rendered; and that he was employed upon his distinct promise to abstain from the use of liquors, and to properly attend to the defendant's business; that no copartnership was ever made or entered into between the plaintiff and the defendant; and that the plaintiff never had any interest in the property, the subject of the action, as a partner; also, that there was no agreement on the part of the plaintiff to share any of the losses arising from the conduct of the business, or assume any of the liabilities therefor,—and consequently dismissed the complaint. And in this, on a careful review of the evidence, we think he was entirely right. As there was no written agreement between the parties, the question of whether there was a copartnership or not was to be determined largely by their conduct,

their manner of dealing with each other, and their manner of dealing with third parties in the presence and with the knowledge of each other. Lindl. Partn. pp. *10, *84. There was a complete absence of testimony which would show or tend to show that the plaintiff ever intimated to any of the defendant's employes that he was there as a partner. He stated to Dankowitz, who had the charge of the cigar stand in the buffet, upon his arrival at 32 Broadway, that the cause of his coming there was that Barron, the defendant, had promised him good wages. He informed the witness Minnahan that he was going down to 32 Broadway because he could get along better with Barron, the defendant, than he could with his father; and. he never said anything to this witness, an old employe at 32 Broadway, about being a partner. One of his first acts upon entering upon his duties was to enroll his name among the regular employes of the defendant, setting the amount of his salary per week opposite the same. . At the end of the week, he also made up a list of the employes of the defendant, stating opposite the name of each the amount to which each employe was entitled, and headed the list with his own initials and weekly salary. When people entered the place of business in question, and asked for the "boss," the plaintiff sent such inquirer at once to the defendant, or informed him of the defendant's absence. His manner of leaving the said place of business when discharged by the defendant was utterly at variance with the idea of a partnership. Before leaving the store on the night of his discharge, he acknowledged to the defendant that he had received his salary. After his discharge, and on the same evening, at his father's place of business, he told the witness Parker, with tears, "that he feels very bad; that it is his own fault; that he has made a fool of himself, and is very sorry. *.*.* Sorry because the defendant has discharged him, and also for drinking." Afterwards he returned to the defendant, and pleaded for reinstatement. in his old position. All of these acts on the part of the plaintiff are entirely inconsistent with the idea of a copartnership. But upon his own testimony the plaintiff was merely to receive a certain share of the profits in compensation for his services as an employe, and was not to participate in the losses. Therefore, there was no copartnership *inter sese*, even if, by the utmost stretch of plaintiff's own testimony, he could be regarded as a partner as far as third parties are concerned. The legal rule that accepting a percentage of profits in compensation for services does not create a copartnership is so well settled that it is scarcely necessary to repeat it here. *Cassidy* v *Hall*, 97 N. Y. 159; *Conklin* v. *Tuthill*, 10 N. Y. St. Rep. 624; *Richardson* v. *Hughitt*, 76 N. Y. 58; *Salter* v. *Ham*, 31 N. Y. 321; *Curry* v. *Fowler*, 87 N. Y. 33; *Burnett* v. *Snyder*, 76 N. Y. 344; *Edwards* v. *Dooley*, 13 N. Y. St. Rep. 602; *De Cordova* v. *Powter*, 8 N. Y. St. Rep. 431; *Adams* v. *Morrisson*, (N. Y. App.) 20 N. E. Rep. 829; *Burckle* v. *Eckhart*, 3 N. Y. 138; *Eager* v. *Crawford*, 76 N. Y. 97. It is clear from the testimony that the defendant did not intend to enter into a copartnership with the plaintiff. To constitute a copartnership, there must be the assent of the individuals to the creation of that relation between them. *Bank* v. *Walker*, 66 N. Y. 431. It is true that the plaintiff and his father, during the course of their testimony, frequently used the word "partner;" but that ought not to have prevailed over the clear and direct testimony offered by the defendant, and the acts of the plaintiff before stated. We therefore think there were no errors in finding or refusing to find as the learned judge did. An appellate court will not reverse on the findings of fact below unless they were made without evidence to sustain them. Where there is a conflict of evidence the findings of fact will not be disturbed. *Bank* v. *Saterlee*, 17 Abb. Pr. 13; *Oil Co.* v. *Richmond*, 10 Abb. Pr. 192; *Ritter* v. *Cushman*, 35 How. Pr. 286; *Pearson* v. *Fiske*, 7 Abb. Pr. 420. In the last of these cases, which was before the general term of this court, the correct rule of law in this respect is laid down fully and concisely as follows; Chief Judge DALY, in writing the opinion,

saying: "An appellate court will not assume the office of a jury or referee," etc. "* * * They will reverse for the want of evidence, or where the finding is against evidence in respect to which there is no contradiction or conflict; and in extreme cases, though there may be some conflict or contradiction in the testimony, they will set aside the verdict, finding, or report if, after full and careful deliberation, they are convinced that it must have been induced by partiality, prejudice, or corruption,"—none of which facts appear in this case.

We have carefully examined the exceptions taken to the admission or exclusion of evidence, but find that there was no error committed in regard to any of them which could by any possibility have affected the result in this case.   The judgment should therefore be affirmed, with costs.