(12 Misc. Rep. 124.

### LANSBURGH v. WALSH et al.

(Common Pleas of New York City and County, General Term.    April 1, 1895.)

ASSUMPSIT—PLEADING AND PROOF.

> In an action to recover the value of timber alleged to have been sold and delivered by plaintiff to defendant, it appeared that defendant purchased the timber through a broker, supposing he was buying from one W., and that, as soon as he discovered that he was buying from plaintiff, he repudiated the transaction. *Held*, that an allegation in the complaint that defendant agreed to pay the fair and reasonable value of the timber did not necessarily render the action one on an express contract of sale, and therefore plaintiff was entitled to recover on a quantum meruit for the timber received by defendant.

Appeal from city court, general term.

Action by Max Lansburgh against Thomas Walsh and others to recover on a quantum meruit for the sale and delivery of timber. From a judgment of the city court (28 N. Y. Supp. 1149) affirming a judgment entered on a verdict in favor of plaintiff, defendants appeal. Affirmed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Michael J. Scanlan, for appellants.

Leo G. Rosenblatt, for respondent.

BISCHOFF, J.   An agreement for one to pay another, who does not in any sense incur liability for losses, a share of the profits, by way of compensation for the latter's services, does not create a partnership.   Printing-Ink Co. v. Bowker (Com. Pl. N. Y.) 16 N. Y. Supp. 523; Hayward v. Barron (Com. Pl. N. Y.) 19 N. Y. Supp. 383. It is unchallenged, therefore, that J. C. Thompson was only the plaintiff's employé, and not party to any contract of sale between the plaintiff and the defendants.   The facts which appeared from sufficient evidence upon the trial, and with regard to which the judgment of affirmance of the court below is conclusive upon us (Gundlin v. Packet Co., 8 Misc. Rep. 291, 28 N. Y. Supp. 572), are that the defendants, through one Benton, a broker, agreed to purchase of Walton Thompson, the son of J. C. Thompson, 210 piles or pieces of timber of certain sizes and at specified prices, which latter were to be subject to deductions for freight charges to be paid by the defendants; that Walton Thompson was acting in the transaction for his father, who was employed by the plaintiff, the owner, in the sale of timber, upon a share of the profits to be derived from sales made by such employé; that, after the plaintiff's shipment and the delivery to the defendants of a part of the timber, the latter repudiated the contract, upon the ground that, when it was made, they were unaware that the plaintiff was the principal, and from the representations of Benton supposed Walton Thompson to be such; and that, at the time of the repudiation, the plaintiff had shipped 125 piles, of which 99 had been concededly received and retained by the defendants, and for which payment had not been made to any one.   Upon this state of the facts, the liability of the defendants for the fair and reasonable value of the piles retained, deducting therefrom the freight charges paid, is

irrefragable. The trial court ruled consistently with that view, and restricted the plaintiff's recovery to such an amount. Neither do the defendants dispute their ultimate liability as above stated, but they contend that the liability was not enforceable in this action. The contention last above alluded to, however, arises wholly from a misconception of the cause of action alleged. The complaint did not seek to enforce payment of an agreed price, but was for recovery upon a quantum meruit for 125 piles alleged to have been sold and delivered to the defendants, less the freight charges paid by the latter. The allegation that the defendants agreed to pay the fair and reasonable value of the timber was, under the circumstances, but the statement of a conclusion of law, and did not necessarily render the action one upon an express contract of sale. Sussdorf v. Schmidt, 55 N. Y. 319. Hence the court properly admitted proof of value, and the defendants' motion for dismissal of the complaint and requests to charge the jury, in so far as such motion and requests were based upon an alleged variance in or failure of the proof, were properly denied.

It would be useless waste of time and labor to consider specifically each of the numerous exceptions which appear in the record. Not one of them presents error which was prejudicial to the defendants, some having been taken to rulings which were based upon concessions on the part of the plaintiff, in the defendants' favor. The recovery below was strictly in accord with the justice of the facts, and we are therefore content to affirm the judgment appealed from. Judgment affirmed, with costs.

DALY, C. J. (concurring). The exception to the ruling of the trial judge that the answer does not contain a counterclaim presents no error, in view of the fact that it was based upon defendants' apparent claim of an effect upon the issues for want of a reply. The ruling was substantially that the counterclaim was not admitted for failure of plaintiff to reply, and that decision was correct. The counterclaim in question is found so designated in the concluding lines of a long and elaborate statement, commencing, "(4) For a further and separate defense to this action," and containing the particulars of the contract as claimed by defendants. The Code requires a counterclaim to be separately stated, which was not done; and, where it is described as a defense, the pleader is bound by his choice, and cannot claim any benefit from the want of a reply. Acer v. Hotchkiss, 97 N. Y. 408, 409. Defendants were not precluded from proof under it. This vigorous litigation over the plaintiff's claim to recover for the value of the 99 logs actually delivered by him, and used by defendants, is probably explained by what seems to have been a hasty letter written by him in reply to their disclaimer of a contract with him. A little timely inquiry would have shown that they were justified in hesitating at that time to recognize the claim of one who was an apparent stranger to their dealings with Benton, and the whole dispute could probably have been adjusted without litigation.

PRYOR, J., concurs.