(36 App. Div. 208.)

PARKER v. JOHN PULLMAN & CO. et al. ,

(Supreme Court, Appellate Division, Second Department. January 3, 1899.)

1. ACCOUNTING—WHEN ALLOWED.
    A contract provided that plaintiff should be employed by defendant
    corporation until employment was terminated by 60 days' written notice,
    and yearly an account of stock of the corporation should be taken, and
    the profits ascertained, and three-sixths paid to plaintiff. The complaint
    alleged that the corporation, without notice, sold all its stock and mer-
    chandise, and retained the moneys, and discharged plaintiff, and refused
    an accounting; that the profits were large, and their amount unknown
    to plaintiff. The complaint demanded judgment for an account and pay-
    ment of the amount due. *Held* to entitle plaintiff to an accounting.
2. PLEADING—COMPLAINT—PRAYER FOR JUDGMENT.
    Code Civ. Proc. § 481, provides that a complaint must contain the title
    of the action, the names of the parties, statement of facts, and "a demand
    of the judgment to which·the plaintiff supposes himself entitled." *Held*
    that, if the facts stated show that plaintiff is entitled to any relief, the
    complaint is not demurrable, on the ground that the plaintiff has not
    demanded the precise relief to which he is entitled.

Appeal from special term, Kings county.

Action by Joseph Kosciusko Parker against John Pullman & Co.
and Leonard S. Parker. From a judgment overruling a demurrer
to the complaint (53 N. Y. Supp. 839), John Pullman & Co. appeal.
Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

Harold Nathan, for appellant.
Charles A. Boston, for respondent.

GOODRICH, P. J. The demurrer brings up two questions: First,
the right of the plaintiff to maintain an equitable action for an
accounting, under the terms of the agreement set forth in his com-
plaint; and, second, the defendants' right to test the question by
demurrer.

The complaint alleges that the plaintiff is a resident of this state
and the defendant corporation a foreign corporation; that on August
18, 1892, a written contract, of which a copy is annexed to the com-
plaint, was executed between the parties to this action, whereby the
plaintiff and the defendant Parker, former employés of the corpo-

ration, should continue in its employ until the same was terminated on 60 days' written notice; that the plaintiff was to have general charge of the factories of the corporation, one situated in Brooklyn, and the other in Baltimore, Md., to engage and discharge all employés, to have charge of deliveries of goods manufactured, and to perform such other services as might be required of him in the business; that the defendant Parker was to have charge of all other matters relating to the office in Brooklyn; that all sales of goods manufactured at the factories were to be made through the corporation, and on the 1st day of August in each year an account of stock should be taken, and the profits of the business carried on at said factories, if any, should be ascertained and apportioned, two-sixths to the corporation, three-sixths to the plaintiff, and one-sixth to the defendant Parker; that if either of the Parkers should leave the employ of the corporation, and an account of stock was not taken at that time and the profits of the business ascertained, either of them so leaving should be entitled, at the next taking of stock, to his timely proportion of the year's profits; that no part of the profits should be withdrawn by either of the Parkers until the business should show a profit of $1,000 over all advances, debts, and liabilities, including the amount then invested by the corporation in the business, the value of which was stated to be $14,704.20; that the plaintiff had the privilege of purchasing the business and property upon giving 60 days' written notice, and paying the corporation the value, as shown by the books; that the defendant Parker was discharged September 27, 1896; that on June 26, 1897, the corporation, without written notice, closed the factory in Brooklyn, to which the property in the Baltimore factory had been removed in June, 1896, and sold all the stock, goods, and merchandise to persons unknown to the plaintiff, and retained the moneys received therefor; that there has never been any ascertainment or apportionment whatsoever, as provided in the written agreement, of the profits of the business, and that the plaintiff has repeatedly since his discharge demanded a full and complete accounting of the dealings and transactions in said business and a payment to him of the amount due him, which the corporation has refused; that the corporation has collected and retained the moneys on all sales of merchandise, and has taken possession of the books in which the accounts were kept; "and that the said accounts are long and complicated, and no settlement thereof has been made between the plaintiff and the defendants," although the profits on such sales and deliveries were large, and the amount is unknown to the plaintiff.

The contract contains the following provision:·

"That said J. Kos Parker and Leonard S. Parker are employés of said John Pullman & Company, and not co-partners with them; that they have no control or interest in said business except as employés; and it is expressly agreed, by and between the parties hereto, that the interest in the profits of said business, which is to be set apart or paid to either of said Parkers, is for salary or compensation as such employés of John Pullman & Company."

The plaintiff demands judgment that an "account may be taken between the plaintiff and the defendants of all and every of the

dealings and transactions of the said business, and that the said John Pullman & Co. pay unto the plaintiff the amount found to be due to the plaintiff under said accounting."

The defendant corporation demurred to the complaint, the court overruled the demurrer, and from the interlocutory judgment the corporation appeals.

The first question involves the equitable jurisdiction of the supreme court. The constitution reserves to the supreme court general jurisdiction, in law and equity. Article 6, § 1. The same general provision was in the constitution of 1846, previously to the passage of the Code of Civil Procedure. It is well, therefore, to consider the English authorities which have decided that mere complication of accounts, without any relation of trust, is enough to give equity jurisdiction. Watford & R. Ry. Co. v. London & N. W. Ry. Co., L. R. 8 Eq. 231; Kimberley v. Dick, L. R. 13 Eq. 1.

In the Watford Case, Lord Romilly, M. R., said (page 237):

"I am quite satisfied that no such account would be taken at law.   *   *   * It is quite settled, if the account is difficult and complicated, that it may be taken in equity, even though there is no relation of trustee and cestui que trust between the parties.   I think this is a case of that description."

In the Kimberley Case, also, he said (page 21):

"At law, I am of opinion that the account would be too complicated to be taken in court; that it would involve too many minute claims and counterclaims to be possible for it to be satisfactorily disposed of without a reference to arbitration, which, according to my experience, is usually one of the most dilatory and expensive of all tribunals.   I am of opinion that the court has jurisdiction to deal with this case, and that it is bound to do so."

In a New Jersey case (Seymour v. Dock Co., 20 N. J. Eq. 396, 407), the court said:

"Courts of equity, in cases of complex accounts, take cognizance sometimes from the very necessity of the case, and from the incompetency of a court of law, at nisi prius, to examine it with the necessary accuracy. In this case, on this ground alone, I think jurisdiction of this cause must be maintained."

The defendant's counsel cites Uhlman v. Insurance Co., 109 N. Y. 421, 17 N. E. 363, as authority for the proposition that an allegation that the accounts are long and complicated is insufficient to give equitable jurisdiction. I do not so understand the decision. The counsel states it too broadly. The court said (pages 433, 434, 109 N. Y., and page 367, 17 N. E.):

"However it may be, it has, at least, been stated that whether or not the court would take jurisdiction upon the sole ground of the account being complicated was a matter largely within the discretion of the court."

Before the adoption of the Code of Procedure in 1848, the rule of the common law prevailed in our own courts.

Post v. Kimberly, 9 Johns. 470 (decided in 1812), was an action for an accounting in which there was a question whether there was or was not a partnership adventure between the parties. I refer to it only to quote a statement from the opinion of Thompson, J. (page 493):

"It was suggested, though not much pressed on the argument, that the respondents' remedy, if any they had, was complete at law, and therefore not proper for a court of chancery. It by no means follows, even admitting the

remedy complete at law, that the court of chancery has not also jurisdiction. It cannot be denied, at this day, but that there are many subjects upon which courts of law and equity have concurrent jurisdiction. Matters of account form one class of this description of cases, with respect to which the court of chancery has a very broad jurisdiction, as the course of proceeding in that court has been considered peculiarly well calculated for the settlement of accounts, if they are in any degree long and complicated."

In the concurring opinion, of Kent, C. J., it was said that it clearly was not a case of partnership, and yet the jurisdiction of the court was maintained by a vote of 14 to 12.

Has the act of 1848, which created the original Code of Procedure, changed this rule? It will be remembered that the preamble of that act declared it to be expedient to abolish the distinction between legal and equitable remedies. To ascertain the effect of this act upon the common-law rule, we must refer to authority.

It has frequently been held that one having no interest in the profits, as such, of an adventure, cannot maintain an action for an accounting merely because his compensation is to be measured by the profits of the business. It hardly needs citation of authority that, in order to constitute a partnership inter sese (the rights of creditors not being involved), there must be a specific interest in the profits themselves, as profits, and that this interest must be a proprietary interest in them, existing before their division into shares. Referring to this, the court, in Leggett v. Hyde, 58 N. Y. 272, 279, said: "The courts of this state have always adhered to this doctrine, and applied or recognized it in the cases coming before them."

In Smith v. Bodine, 74 N. Y. 30, the plaintiff brought the action on contract to recover for services rendered by him as salesman for the defendant, for which he was to have a certain percentage of the profits realized from the business. The action was based upon an agreement between Bodine & Co. and one Smith for a year's service, Bodine & Co. agreeing to pay Smith "for his services during said year ten per cent. of the net profits of their business for said year, the profits to be ascertained by deducting the store expenses and interest at the rate of seven per cent. per annum on the capital, and whatever money there may be due either of the partners at the end of said year and all doubtful debts to be deducted." The action was referred, and the referee allowed an accounting between the parties, which was alleged to be error; but the court affirmed the judgment, holding that the plaintiff's action, based on contract, was proper, and that the fact that a statement of an account was necessary to establish his claim did not require an equitable action, and that, "not being a partner, the plaintiff could not institute an action in equity."

Salter v. Ham, 31 N. Y. 321, was an action for an accounting, and a partnership was alleged in the complaint, but the court held that the facts disclosed no partnership and no interest in the property, and hence the action for an accounting would not lie.

Judge Finch, in Marvin v. Brooks, 94 N. Y. 71, 80, said:

"The basis and extent of the equitable jurisdiction over matters of account appears to have been seldom considered in our courts, but often discussed in the English authorities. We have been referred to many of these, but they

56 N.Y.S.—47

seem to us not harmonious, and occasionally difficult to reconcile. [Citing cases.] The best-considered review of the authorities puts the equitable jurisdiction upon three grounds, viz.: The complicated character of the accounts; the need of a discovery; and the existence of a fiduciary or trust relation. 1 Story, Eq. Jur. § 459, and note 5. The necessity for a resort to equity for the first two reasons is now very slight, if it can be said to exist at all, since a court of law can send to a referee, a long account, too complicated for the handling of a jury, and furnishes by an examination of the adverse party before trial, and the production and deposit of books and papers, almost as complete a means of discovery as could be furnished by a court of equity."

He cites, with apparent approval, Marston v. Gould, 69 N. Y. 220, saying (page 81):

"An accounting is always proper in cases of partnership, yet where the parties were not partners, but the relation existing was that of a quasi partnership, and the position of the party sued involved 'the same trust, duties, and obligations,' the right to an accounting was declared. To the same effect. are other authorities."

Turning to the citation of Story, referred to in the opinion of Judge Finch, I find it stated (section 458) that courts of equity will entertain jurisdiction in matters of account, not only where there are mutual accounts, but where the accounts to be examined are on one side only and a discovery is wanted in aid of the account and is obtained; and in section 459 it is said:

"It may be laid down as a general doctrine that, in matters of account growing out of privity of contract, courts of equity have a general jurisdiction where there are mutual accounts (and a fortiori where these accounts are complicated), and also where the accounts are on one side, but a discovery is sought and is material to the relief."

Marston v. Gould, supra, as shown by the case on file, was an action for an accounting. It involved a contract between the parties, who had agreed that the defendant should furnish capital for the purchase and sale of shares of stock, and bear the loss, if there should be any, and that any profit was to be divided in a certain ratio between the parties. The court said (pages 224, 225):

"Whether the parties were strictly partners inter sese or as to third persons is not material. They stood in that mutual and confidential relation to each other, and had that joint interest in the result of the adventure, that either could demand an accounting with a view to ascertain the profit or loss and ascertain their respective rights. * * * Courts of equity hold each partner responsible to the other for all losses sustained by the misconduct or a misapplication of the partnership funds. Story, Part'n, § 233. The same remedy exists against any one occupying the position of a quasi partner involving the same trust, duties, and obligations. The action of the plaintiff was not, therefore, misconceived, whether it be regarded as an action for an accounting and a distribution of the profits, or for the adjustment of losses sustained by the misconduct of the defendant."

It will be observed that in some of the authorities cited there is a recognition of the right to an action for accounting where such right grows out of privity of contract. In this view, the contract between the parties distinctly gives the plaintiff the right to have a yearly account and an ascertainment of the profits. The complaint alleges that the defendants have removed all the stock from and closed the factory and discharged the plaintiff without accounting and

without giving him the 60 days' notice required by the contract; that they have sold the stock, and collected the money therefor, and have possession of the books of account. If the 60 days' notice had been given, and the plaintiff had been allowed access to the books, the accounts between the parties might have been adjusted without resort to the court for accounting; and, as the defendants have refused any statement or settlement whatever, I see no reason why a court of equity may not compel the defendants to do precisely what they covenanted to do in their agreement with the plaintiff.

The complaint also alleges that the plaintiff has demanded an account since his discharge, and that the same has been refused, while it also alleges that there has never been any ascertainment or apportionment of the profits. If the contract gives the right to an account, I can see no reason why that right should not be enforced, whether the action be one of contract or in equity. It makes no practical difference in the result, for in an action triable by a jury the court may, of its own motion, direct the trial of the issues of fact by a referee, where the trial will require the examination of a long account (Code Civ. Proc. § 1013); or it may direct a reference to take an account, and report to the court, after interlocutory or final judgment, or where it is necessary to do so for the information of the court (section 1015). The right to trial by jury does not, therefore, seem necessarily to be involved in the decision of this appeal, as is contended by the defendants' counsel.

There is still another consideration which may possibly and properly affect the decision. The contract provided that, if either of the Parkers left the employ of the corporation and an account of stock was not taken, either of them should be entitled, at the next taking of stock, to his timely proportion of the year's profits. The defendant Parker was discharged on 60 days' notice, and his share of the unascertained profits, in accordance with the agreement, was left in the hands of the corporation. The complaint alleges that there were such profits, of which the defendant Parker would be entitled to his proportion, and that the same were left with the corporation, there to remain till the next annual stock-taking. This amount became and was a part of the fund used by the corporation in the business, and the plaintiff is entitled to any benefit resulting from its use, and for this use the corporation has agreed to account.

The plaintiff was discharged without notice or accounting, and without opportunity to exercise another substantial privilege, namely, the right to purchase the business and property. The acts of the corporation have deprived the plaintiff of this right, and a court of equity may be able to find in this fact an additional reason for assuming a jurisdiction which is within the discretion of the court, as already stated.

The complaint specifically alleges that the "accounts are long and complicated," and, within the decisions cited, I think this allegation, coupled with the clause in the agreement providing for a yearly account and an ascertainment and apportionment of the profits, is sufficient, on demurrer, to sustain the equitable jurisdiction of the court.

As to the second question, the right of the defendant to test juris-diction by demurrer depends partly upon sections 481 and 1207 of the Code of Civil Procedure. The former provides that a complaint must contain—First, the title of the action, the name of the court, and the names of the parties; second, a statement of the facts consti-tuting the cause of action; and, third, "a demand of the judgment to which the plaintiff supposes himself entitled." But this does not mean that the plaintiff may not have any other judgment than he demands, although section 1207 provides that, where there is no answer, the judgment shall not be more favorable to the plaintiff than he has demanded in his complaint. This clearly relates, not to an action where a demurrer has been interposed, but to one where a judgment is to be entered by default; and the reason is plain, a party may be willing to permit a judgment by default, not more favorable than that which is demanded in the complaint; but when he demurs, as in the present instance, his claim is that the plaintiff is entitled to no relief whatever on the allegations of the complaint, for the demurrer here is that the "complaint does not state facts sufficient to constitute a cause of action,"—in other words, that the plaintiff is entitled to no judgment whatever. Under our present system of pleading, a plaintiff is entitled to such relief as the allega-tions of the complaint justify, irrespective of the prayer for judg-ment. Emery v. Pease, 20 N. Y. 62; Wright v. Wright, 54 N. Y. 437; Williams v. Slote, 70 N. Y. 601; Wetmore v. Porter, 92 N. Y. 76. In the last case the court said (page 80):

"It has been repeatedly held, under the Code, that if the facts stated in a complaint show that the plaintiff is entitled to any relief, either legal or equitable, it is not demurrable upon the ground that the party has not de-manded the precise relief to which he appears to be entitled."

The judgment must therefore be affirmed, with costs.

Interlocutory judgment affirmed, with costs, with leave to the appellant to withdraw demurrer and serve answer within 20 days, on payment of the costs of demurrer and of this appeal. All concur.