(44 Misc. Rep. 288.)

## SMITH v. DUNN.

(Supreme Court, Special Term, New York County. July, 1904.)

1. PARTNERSHIP—PLEADING AND PROOF—JOINT ADVENTURE.

Plaintiff sued to dissolve a partnership and for an accounting, and alleged that the firm had been created to carry out certain city contracts secured by defendant; that the firm had agreed to perform some of the contracts, and had completed some and partly completed others; and that defendant withheld from plaintiff his share of the net profits, and refused to allow him access to the firm books. *Held*, that under such plead-

ing evidence of a joint adventure would be insufficient, but plaintiff must show affirmatively an agreement to enter into a partnership.

2. SAME—WHAT CONSTITUTES.

A partnership is not created by an agreement to participate in the profits as a means of compensation without liability for loss.

Action by Terence A. Smith against Bartholomew Dunn to dissolve a partnership. Complaint dismissed.

Isaac and Jacob Fromme, for plaintiff.
Jacob Marks, for defendant.

CLARKE, J. Action for the dissolution of a partnership, the appointment of a receiver of the partnership property, and for an accounting. The complaint alleges "that on or about the 31st day of March, 1897, the plaintiff and defendant formed a partnership for the purpose of carrying on certain contracts entered into by said defendant with the city of New York for the construction of certain public works in the said city of New York, under an agreement that the plaintiff and defendant should co-operate in the carrying on and management of said business, and should divide between them in equal shares or proportions the net profits of such business. * * * Since the said 31st day of March, 1897, the plaintiff and defendant as such partners have undertaken and agreed to perform a large number of contracts for said city of New York, and have completed a number of said contracts, and earned profits thereon to a large amount, and have other of said contracts now in a state of partial performance; and, although said partnership has never been dissolved, the said defendant has taken exclusive possession of the partnership books and stock, and has refused and still refuses to allow the plaintiff to have access thereto; and said defendant has collected and received, and now has in his possession, large sums of money of said partnership, and has refused and still refuses to render any account thereof to the plaintiff, or to pay to the plaintiff his share of the profits of said partnership." The action was commenced in June, 1903, upward of six years after the formation of the alleged partnership. The alleged agreement was oral. The defendant absolutely denies it. Though many of the contracts with the city have long been completed, no account has ever been rendered to the defendant, nor has he been paid any of the "net profits." It was in evidence that prior to this alleged agreement of March, 1897, and about a year before January 28, 1897, the plaintiff and defendant were interested in certain other contracts with one Bernard Mahon and Thomas J. Dunn. Their mutual relations at first were established by a verbal contract, which was afterward reduced to writing, and was introduced in evidence by the defendant. Under that verbal agreement contracts were to be obtained from the city for public works. Messrs. Mahon and Thomas J. Dunn were to put in the capital, and plaintiff and defendant to superintend the work and look after it, and the profits were to be divided equally. When the agreement was reduced to writing, all the contracts had been obtained from the city, and most of them had been completed. This contract describes each one of the city contracts,

¶ 2. See Partnership, vol. 38, Cent. Dig. §§ 15, 26, 39, 46.

and in whose name taken. It was a partnership agreement without doubt. It described certain contracts obtained by Dunn in his name and certain contracts obtained by Smith in his name. It provides: "Whereas, Thomas J. Dunn and Bernard Mahon are to furnish the capital required by said Bartholomew Dunn and Terence A. Smith to perform the work required by said contracts," it was agreed between all four that T. J. Dunn and Mahon should each receive one-quarter of the profits on the respective contracts for which they shall have provided one-half the capital and Bartholomew Dunn and Smith should each receive one-quarter of the profits, "and are to attend to the carrying out of the same." All losses were to be borne equally by all the parties. The contract in the case at bar is claimed to be similar in character, with the elimination of Mahon and T. J. Dunn. There is nothing inherently improbable in the claim, because this previous contract shows that the parties were accustomed to associate in this kind of business and to divide profits, and that Smith, by reason of his experience as a contractor and familiarity with figuring on proposals and estimates, was a valuable man in such an enterprise. In concerns contemplating the business of acquiring and performing city contracts the getting of the contract is of the utmost importance. As these contracts are let at public competition to the lowest bidder, the ability to figure closely is of as much importance as the ability to provide the money necessary to start the work. So that a partnership in which one party was to furnish the working capital and the other do the estimating to obtain the contract and superintend the work would neither be unlikely nor unusual. The question is, has the plaintiff sustained the burden of proof of establishing that such a contract of partnership was, as matter of fact, entered into? After plaintiff had closed his case, having given in great detail evidence of conversations as to each particular contract in regard to which he claimed his interest extended, and after a motion to dismiss had been argued at length upon the point that no evidence had been tendered which supported the allegation of the complaint "that on or about the 31st day of March, 1897, the plaintiff and defendant formed a partnership," etc., the plaintiff was recalled, and testified that along in the first of March, 1897, before any of the conversations to which he had testified in regard to specific city contracts, he met Mr. Dunn on Riverside Drive, and had a conversation. That he said to Mr. Dunn:

"Now, Mr. Mahon is interested in the Canadian railroad business. He is not going to take an active part any more in the city contracts. You and I will take the contracts that come out hereafter jointly. You furnish the bonds and the money that is required, and I will make the estimates and get the work. Mr. Dunn said, 'All right,' and I said: 'There is to be no others interested but you and I.' He said, 'All right, we might as well do this ourselves as have three or four into it.' And I was to go ahead and do the work, as he was not familiar with contracting at the time. The character of the work I intended to carry on was sewer business. We would divide the profits on any work that we got, and he would furnish bonds and the capital that was required to carry on that work, and I would look after it."

That was all said prior to the Pool contract, which was the first contract on the 23d of March, 1897. I do not credit this story for the following reasons: First. It was evidently born of the necessities of the

case, after the plaintiff had rested, and after a long argument in plaintiff's presence had pointed out the defects in his case which this testimony was produced to remedy. Second. In each specific instance of a contract he had testified to a detailed conversation as to the obtaining of the contract, as to the respective functions and duties of the parties, and the equal division of the profits. If this general agreement had, as matter of fact, theretofore been made, these subsequent agreements were supererogatory. What reason could there have been for going over again in each instance the terms of a partnership which already existed? Third. The precise conversation which plaintiff details as having taken place about the 1st of March, 1897, in regard to Mr. Mahon having become interested in the Canadian railroad business, and therefore not going to take an active part any more in city contracts, and the proposal for Smith and Dunn to take them and divide the profits, etc., the plaintiff had given earlier in the case in regard to the Academy street sewer. This contract was dated January 19, 1898 —11 months after the alleged agreement of partnership of March, 1897, and after three of the other contracts which are the subject of this suit had been obtained from the city. His testimony was:

"I talked with Mr. Dunn about the Academy street sewer. I said: 'Now we will go into this work leaving Barney Mahon and Mr. Thomas Dunn out. As Mr. Mahon is interested in the Canadian Railroad, he don't seem to feel disposed to take very much interest in it. You and I can hold onto this. You furnish the bonds and I will prepare the estimates; and whatever money is required you will furnish, and we will divide the profits equally. He said, 'All right.'"

I cannot believe that this conversation took place in regard to the Academy street sewer if it had already occurred 11 months before in regard to the general scheme. If plaintiff told the truth about the March agreement, Mahon and Thomas J. Dunn had been out of the arrangement for 11 months. It is asking too much of the court to rearrange this testimony and antedate it 11 months to suit the exigency of the developed case. The defendant's version of the relations of the parties is as follows: That shortly after the agreement of January 28, 1897, was signed he and Smith had a talk, in which Smith said: "'Now, if you are going to estimate on any other city contracts, if I can be of any help to you, I will help you in figuring on other work.' I said, 'All right, Mr. Smith, I will make it all right with you.'" Defendant also testified that he said to plaintiff, "if he would go on the work—look after the work, and see that the men were doing a fair day's work, and report to me, and do anything that I would ask him to do—I would pay him for it. Nothing was said as to how much I would pay him for his services, and the subject of what I would pay him was not referred to after that." Defendant further testified that thereafter he requested plaintiff to figure on the estimates upon the contracts which are embraced in this suit, and that he did afterward tell him to go on the work of these contracts, and see if the men were doing what was right, and in any way he could assist in carrying on the work. So both parties agree that Smith figured on the estimates, and to some considerable extent superintended the work, and this for a number of years. Defendant claims to have paid Smith a "couple of

thousand dollars." But it was testified that this amount was all paid by checks, and it is conclusively shown that in an action on an accounting growing out of the written contract of January 28, 1897, defendant has charged all of these checks and their amounts against Smith; so that it appears that Smith has not been paid anything for very considerable and—so far as the estimating which obtained these contracts is concerned—valuable work. But, conceding all that, is the plaintiff entitled in this action in equity for the dissolution of a partnership, the appointment of a receiver, and for an accounting to the relief demanded in the complaint; it being recalled that the complaint, as the foundation of the action, alleges "that on or about the 31st day of March, 1897, the plaintiff and defendant formed a partnership for the purpose of carrying on certain contracts entered into by said defendant with the city of New York," and "since the said 31st day of March, 1897, the plaintiff and defendant, as such partners, have undertaken and agreed to perform a large number of contracts," etc. The very gist of this action is the partnership. The plaintiff has the burden of establishing this. If his proof falls short of this, the complaint must be dismissed. Heye v. Tilford, 2 App. Div. 346, 37 N. Y. Supp. 751. If he establish a joint adventure, that is not enough under these pleadings. It should be borne in mind that the joint enterprise, if such there be, has not been concluded. There is a sewer contract with the city, aggregating over $850,000, still in process of completion. As pointed out in Heye v. Tilford, 2 App. Div. 346, 37 N. Y. Supp. 751, affirmed 154 N. Y. 757, 49 N. E. 1098, Marston v. Gould, 69 N. Y. 220, does not apply. In that case there was no allegation that the parties had entered into a partnership between themselves. The only claim was that they were engaged in a joint adventure, which had come to an end, and for that reason the plaintiff was entitled to an accounting, and to the payment of his share. In Arnold v. Angell, 62 N. Y. 508, as in the case at bar, an action was brought for an accounting upon an allegation that the plaintiff and the defendant were copartners, and the relief demanded was that the copartnership be dissolved, and that there be an accounting, and a division of the proceeds. At trial it was held that there was no partnership, but that in spite of that fact, because there was a joint adventure, the plaintiff was entitled to an account of the business. The General Term affirmed the interlocutory judgment, but this was reversed by the Court of Appeals saying that, when the issue of partnership was decided against the plaintiff, the action was at an end, and defendant was entitled to judgment; citing Salter v. Ham, 31 N. Y. 321. To establish that parties are partners inter sese an agreement must be shown. Unless in some manner it is found to be the intention of the parties that they should become partners, then the partnership cannot be said to exist. Participation in profits arising from the management of a business does not alone create partnership. It is well settled that when a party is only interested in the profits of a business as a means of compensation for services rendered, he is not a partner. Richardson v. Hughitt, 76 N. Y. 55, 32 Am. Rep. 267; Curry v. Fowler, 87 N. Y. 33, 41 Am. Rep. 343; Cassidy v. Hall, 97 N. Y. 159. An agreement for one to pay another, who does not in any sense incur liability for losses, a share of the profits by way of compen-

sation, does not create a partnership. Lansburgh v. Walsh, 12 Misc.
Rep. 124, 33 N. Y. Supp. 45. The plaintiff testified under cross-examination:

"I was to do the figuring at my home. For the services I was to render
in looking after that job we agreed to divide the profits equally, and that
is the same with all these other contracts for all services I rendered in superintending the work, hiring men, and looking after it. I was to be paid
for these services by dividing the profits equally, and that applied to all this
suit." Again: "In making that estimate, giving the proposal, and superintending the work, I was to receive from Mr. Dunn for my services one-half
of the profits."

It is conceded that Dunn supplied all the capital, paid· all the bills,
took the contracts in his own name. Nowhere was Smith held out as
a partner. If it be conceded that he was to receive one-half the profits,
he was not responsible for any of the losses. Neither from direct
testimony nor reasonable inference can I find that he has established
a partnership by a fair preponderance of credible evidence. If the relations as to each contract be looked at in the light of joint venture, he
is not entitled to judgment in this action, based upon a partnership
for a dissolution, a receiver, and an accounting, under Heye v. Tilford
and Arnold v. Angell, supra. If, as an employé to be paid upon the
basis of half the profits, while to ascertain the amount due an accounting may be necessary, it cannot be had in this action. For the failure
to establish the corner-stone of his case—the partnership—this complaint must be dismissed, with costs.

Complaint dismissed, with costs.