## LEONARD SWANSON v. MARSHALL H. ALWORTH AND ANOTHER.[1]

July 2, 1926.

No. 24,819.

**How to determine whether action is at law or in equity.**

1. In action to recover upon a contract whereby the plaintiff was to receive as compensation for his services in exploring for minerals a stated weekly compensation and a percentage of the net profits *held* one in equity in which the plaintiff was not entitled to a jury trial. Whether an action is at law or in equity is usually determined by an inspection of the complaint, but where the contract of employment, as here, is alleged in full in the answer, and the plaintiff in his reply in effect admits it, claiming that insofar as it differs from that alleged in the complaint it did not represent the real understanding and agreement, no reformation being sought, the question will be determined upon the issues made by the pleadings.

**Proper to refuse to dismiss action in equity without prejudice and to award judgment of dismissal on merits.**

2. The plaintiff before resting moved to dismiss without prejudice. His motion was denied. He then moved that judgment be entered in favor of the defendants on the merits. The defendants objected and the motion was denied. The trial proceeded, the plaintiff not participating, and the court made findings of fact and conclusions of law. There was no error in refusing a dismissal without prejudice, nor in denying a judgment of dismissal on the merits and proceeding with the trial to findings of fact and conclusions of law.

Actions, 1 C. J. p. 1044 n. 44, 47.
Case at law, 11 C. J. p. 20 n. 1.
Dismissal, 18 C. J. p. 1150 n. 74, 75; p. 1158 n. 20.
Juries, 35 C. J. p. 159 n. 33; p. 161 n. 40, 50; p. 164 n. 78.

Action in the district court for St. Louis county to recover for services. The case was tried before Kenny, J., who ordered judg-

[1]Reported in 209 N. W. 907.

ment in favor of defendants. Plaintiff appealed from an order denying his motion for a new trial. Affirmed.

*Lewis & Hunt,* for appellant.

*Washburn, Bailey & Mitchell,* for respondents.

HOLT, J.

Action to recover for services in exploring for minerals under a contract by which the plaintiff was to have a weekly compensation and 10 per cent of the net profits resulting. The weekly compensation has been paid. The controversy is over claimed profits.

The case was here on appeal from an order denying the plaintiff's motion to amend the complaint and the order was sustained. 157 Minn. 312, 196 N. W. 260. It was here later on a proceeding in mandamus, original in this court, to compel the granting of a trial by jury. The writ was discharged upon the ground that mandamus was not the appropriate remedy. 159 Minn. 193, 198 N. W. 453.

The plaintiff's claim of right to trial by jury was denied at the trial. The trial proceeded without a jury for more than two weeks. The plaintiff became dissatisfied and moved to dismiss without prejudice. The defendants objected, and the motion was denied. The plaintiff then moved for the entry of judgment on the merits in favor of the defendants. The defendants objected and claimed the right to proceed with the trial. The court held with them. The plaintiff then refused to participate longer in the trial. The taking of evidence continued, the plaintiff not participating further. The court made findings for the defendants. It found that the contract between the parties was in writing; that the defendant Alworth had expended something like $80,000 in development work; that no profits accrued, and that the plaintiff had relinquished his contract for a consideration. The plaintiff appeals from the order denying his motion for a new trial.

The basic question is whether the plaintiff was entitled to a trial by jury, and all other questions necessary to mention are important only in connection with the claim of a right to trial by jury.

1. The complaint is profuse in its allegations. Briefly, the facts alleged are about as follows:

The defendant Alworth owned mineral lands, and the defendant Pearson was associated with him in their development. In July, 1909, the plaintiff entered into an agreement whereby he was to work exclusively for and in co-operation with the defendants in locating minerals upon lands which they should designate, whether or not then owned by them. It was contemplated that Alworth would buy lands not owned if mineral was discovered. He was to make such expenditures as were necessary in developing mineral lands explored and recommended by the plaintiff. Pearson was to designate from time to time the lands which it was desired to explore, and was to accompany and assist the plaintiff and keep a record of explorations. It was agreed that

"Alworth would pay plaintiff for his services a nominal salary of fifteen dollars ($15.00) per week to cover his living expenses, and that the balance of plaintiff's compensation for his services in investigating and exploring said properties should be paid to plaintiff by defendant Alworth out of the net profits made from the operation of such properties as plaintiff should be called upon to explore and out of the sale or other disposition of said properties, and defendants agreed with plaintiff that defendant Alworth would pay to plaintiff, as additional compensation for his said services, ten per cent of the net profits derived from the operation of such mines as plaintiff explored at defendant[s'] request, and out of the sale, lease, development or other disposition of the properties explored by plaintiff, for and in co-operation with defendants." All properties coming under the agreement were to be treated as an entirety. The information obtained "should be kept secret for the benefit of plaintiff and defendants, and that full disclosure should be made by each party to the other at all times."

The plaintiff performed his part of the contract and discovered and located valuable deposits of iron and other minerals. He was paid his weekly compensation, but no part of the net profits, which he alleges amounted to $20,000,000.

The defendant Alworth admits in his answer that an agreement relative to the exploration and location of mining lands was made with the plaintiff and alleges that it was in writing and as follows:

"This Agreement, Made this 10th day of July, 1909, by and between Marshall H. Alworth, of the first part, and Leonard Swanson and Charles A. Pearson, of the second part, Witnesseth: That,

Whereas, said Swanson is claimed by the second parties to be possessed of certain instruments capable of such operation by him as with his own powers and personal qualifications make it possible for him to locate the presence of valuable deposits of minerals, especially of copper and coal and iron, and said second parties are associated together in making investigations, by and through the above means, for the location of such minerals in St. Louis county and nearby territory and have made such investigations as tend to convince them and convince the party of the first part of the possibility of discovering such minerals by said means,

Now, Therefore, In consideration of the mutual covenants and promises herein contained, it is agreed between these parties as follows:

(1) Said Swanson hereby enters the employ of said Alworth for the purpose of pursuing such explorations and investigations and the discovery of the existence of such minerals and the locality of the deposit thereof, and to work in the pursuit of such explorations and discoveries exclusively for said Alworth, for which said Alworth hereby agrees to pay him, said Swanson, the sum of Fifteen Dollars per week, until the said relations be by the said Alworth terminated, which he may do at any time on a week's notice.

(2) The said other party of the second part, for the considerations to come to him as hereinafter specified shall use his best efforts to aid Swanson in such explorations, and said second parties will cooperate together and with the said first party for the benefit of all of the parties hereto, and will not only pursue such search and investigation where their independent judgment may dictate, but also pursue the same on any tracts of land designated from time to time by said Alworth; in all cases the information obtained to be kept secret for the benefit of the parties to this agreement and full disclosure made each to the other throughout such explorations.

(3)   Said Alworth agrees to make a test at such places or place as may be deemed by him favorable therefor by means of drill work or test pits, drifts or other appropriate means, of the actual existence of such deposits where indicated by the said Swanson, with a view of determining the fact, extent, character and commercial value of such deposits, and if the results are such as in the judgment of said Alworth to make it profitable to acquire the lands where such locations of ore are discovered, said Alworth, at his option, shall purchase and acquire the same.

(4)   In case these explorations lead to discoveries that seem to make mining profitable, then either through the organization of a mining company or mining companies, or contracting with other persons, companies or corporations, means shall be provided for the operation of such mines as may have been discovered, and the said lands shall be so handled by said Alworth, whether by sale, lease or otherwise, that twenty per cent of the net profits resulting from their management, sale or other disposition shall accrue to the parties of the second part in equal proportion, and said Alworth will and shall so handle the same as to save and preserve to the said parties of the second part their full proportion of the benefits as above specified.

(5)   Said Alworth may spend such moneys as he deems advisable but shall not be compelled to spend money when he deems it unwise or unjustifiable to do so.  He may terminate the relations here created whenever he deems it unprofitable to pursue further and all property theretofore acquired pursuant to this agreement, shall in such case be held by him for the joint benefit of the parties hereto, subject to the charges he may have for expenditures.

All the properties which in any manner may become the subject of transactions under this agreement shall be treated as an entirety in the adjustment of matters between the parties hereto growing out of this agreement.

All of the parties hereto pledge to each other their fidelity in carrying out both the letter and spirit of this agreement and a breach on the part of any one herein in that respect shall be cause for forfeiture of all his interests hereunder."

The defendant Alworth alleges that no profits accrued; and further that on June 13, 1916, the plaintiff for a valuable consideration relinquished and surrendered all right therein. These facts the court found.

In his reply the plaintiff admits that there was a writing, but alleges that if it differed in terms from that set forth in the complaint he never agreed to its terms. He alleges that he was unable to read it, was unable to understand the meaning of the language employed, that the defendants prepared it and stated its terms in accordance with the agreement set forth in the complaint, and that he relied upon the defendants. He admits that in 1916 there were negotiations for an adjustment, but denies that he surrendered or relinquished his right under the agreement of July, 1909, and denies that he ever executed a release; and he alleges that if he ever executed a release he was induced to do so by the fraud and deceit of the defendants.

The contract upon which the plaintiff must rely is the written contract. The reply really does not deny that there was such a contract, but alleges that insofar as it differs from that alleged in the complaint it is not in accordance with their understanding and agreement, and there is a charge of fraud of too loose and general a character to be of legal significance. There was no effort to reform the contract. The plaintiff went into the trial knowing that the rights of the parties, under the issues as framed, were based on the written contract. In fact, his complaint has become in real substance one on the written contract admitted by the reply to have controlled all the transactions in question.

Expressions are frequent in the books that whether a plaintiff is entitled to a jury trial must be determined upon the complaint. Greenleaf v. Egan, 30 Minn. 316, 15 N. W. 254; Bond v. Welcome, 61 Minn. 43, 63 N. W. 3; Nordeen v. Buck, 79 Minn. 352, 82 N. W. 644; Shipley v. Bolduc, 93 Minn. 414, 101 N. W. 952; Williams v. Howes, 137 Minn. 462, 162 N. W. 1049; King v. International L. Co. 156 Minn. 494, 195 N. W. 450. Usually there is no other way. But when as here the reply admits the written contract, and there is no desire to reform it and the plaintiff does no more than charge that

it does not correspond to the real understanding and agreement and goes to trial with the issues so framed, we do not hesitate to hold that the right to a jury trial must be determined by looking to the character of the issues to be tried as made by the pleadings. The complaint, which the plaintiff by his reply concedes is not accurate, does not then control. This brings us to a consideration of the constitutional right to trial by jury.

The Constitution provides: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." Const. art. I, § 4. From the beginning it has been held that the Constitution guarantees that the right to jury trial shall remain as it was in the territory at the time of the adoption of the Constitution. Hawley v. Wallace, 137 Minn. 183, 163 N. W. 127, and cases cited. The statute then as now granted a jury trial "in an action for the recovery of money only, or of specific real or personal property." R. S. 1851, c. 71, § 6; G. S. 1923, § 9288. The term "cases at law" refers to common law actions as distinguished from causes in equity and certain other proceedings. State v. Minnesota T. Mnfg. Co. 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510. That the recovery of money only is sought does not give a right to a jury trial. The recovery of money alone may be sought in an equitable action.

The contract evidences something in the nature of a partnership or a joint venture. Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914C, 689; Moore v. Thorpe, 133 Minn. 244, 158 N. W. 235; National S. Co. v. Winslow, 143 Minn. 66, 173 N. W. 181. There is as expressly declared a fiduciary relation between the parties. Co-operation was promised. Information acquired was to be kept secret. All property acquired was to "be held by him [Alworth] for the joint benefit of the parties." If the lands proved worthy of development they were to be "so handled by said Alworth, whether by sale, lease or otherwise, that twenty per cent of the net profits resulting from their management, sale or other disposition shall accrue to the parties of the second part in equal proportion, and said Alworth will and shall so handle the same as to save and pre-

serve to the said parties of the second part their full proportion of the benefits as above specified." If the relations between the parties were terminated by Alworth "all property theretofore acquired * * * shall in such case be held by him for the joint benefit of the parties hereto, subject to the charges he may have for expenditures." All the properties acquired were to be "treated as an entirety in the adjustment of matters between the parties." It was intended that the plaintiff and Pearson should have a definite proprietary interest in the net proceeds, and Alworth impressed such profits with a trust for his benefit. The plaintiff, it is true, is not seeking to enforce a proprietary interest in specific net profits or asking equitable aid in reaching specific profits and applying them under the contract. He is asking that his proportion of the net profits be given him by way of a personal judgment. That his action is for the recovery of money only does not prevent its being equitable. There is a fiduciary relation and a duty resting upon Alworth to account for the plaintiff's share of the profits. There are no mutual accounts between the two, but that does not prevent the action being equitable. Upon a somewhat prolonged consideration we conclude that there was no right to jury trial. We note the following, though not parallel in their facts, as helpful: Garner v. Reis, 25 Minn. 475; Fair v. Stickney Farm Co. 35 Minn. 380, 29 N. W. 49; Bond v. Welcome, 61 Minn. 43, 63 N. W. 3; Morton B. & T. Co. v. Sodergren, 130 Minn. 252, 153 N. W. 527; Pratt v. Tuttle, 136 Mass. 233; Marston v. Gould, 69 N. Y. 220; Parker v. John Pullman & Co. 36 App. Div. 208, 56 N. Y. Supp. 734; Ferry v. Henry, 4 Pick. (Mass.) 74; Channon v. Stewart, 103 Ill. 541; Street v. Thompson, 229 Ill. 613, 82 N. E. 367.

2. In the event of a holding that he was not entitled to a jury trial it is the claim of the plaintiff that it was error to deny his motion for judgment on the merits in favor of the defendants. The statute provides for a dismissal. G. S. 1923, § 9322. We do not understand that the plaintiff claims there was an abuse of discretion in the denial of his motion to dismiss without prejudice. He could not make this claim successfully. The rule is liberal in favor of per-

mitting a voluntary dismissal, so as not to prejudice the rights of the plaintiff in subsequent litigation, and only in extreme cases would a denial be sustained. There was no error here. The contract involved was many years old. There had been very considerable delay. There had been many preliminary motions, and the case in different phases had been to this court twice. The trial was in its third week. Manifestly it was not error to deny a motion for a dismissal without prejudice. The statute does not give the right. Lando v. C. St. P. M. & O. Ry. Co. 81 Minn. 279, 83 N. W. 1089.

The plaintiff is insistent that there should have been nothing more than judgment on the merits for the defendants, and that the court should not have proceeded to findings of fact and conclusions of law. He relies considerably upon Lindstrom v. Helk, 139 Minn. 100, 165 N. W. 873. In that case the court construed the record as showing that the parties had submitted their case and therefore findings were proper. There was a suggestion, though not a necessary holding, that unless there was a submission by the parties there should not have been findings on the merits. We do not understand § 9322, sub. 3, as requiring a dismissal either without prejudice or on the merits when the plaintiff assumes to abandon his case, nor as preventing the court in proceeding with the trial to findings and conclusions. The Lindstrom case should not be construed as so holding.

Order affirmed.

DIBELL, J. (dissenting.)

Insofar as the prevailing opinion holds that the plaintiff was not entitled to a jury trial I dissent. It is conceivable that facts might be such that the protection of the plaintiff's rights under the contract would justify the interposition of a court of equity and the application of an equitable remedy. The plaintiff does not see such need nor present such a case and does not ask relief in equity. He seeks to recover at law an amount of money which he says has accrued under the contract and which is ascertainable by computation. He makes no complaint except that the percentage coming to

him has not been paid.   A computation, attended so far as appears with no unusual complications, may be necessary, but not an accounting in equity; and the case which the plaintiff makes is at law for the recovery of money only.   See St. P. & S. C. R. Co. v. Gardner, 19 Minn. 99 (132), 18 Am. Rep. 334; Nordeen v. Buck, 79 Minn. 352, 82 N. W. 644; McPherson v. G. W. Mill. Co. 45 Cal. App. 91, 187 Pac. 80; Smith v. Bodine, 74 N. Y. 30; Lindner v. Starin, 128 App. Div. 664, 113 N. Y. Supp. 201; Brown v. Corey, 191 Mass. 189, 77 N. E. 838; Galusha v. Wendt, 114 Iowa, 597, 87 N. W. 512.   In view of the allegations and admissions in his pleadings it may be that the plaintiff would find it difficult to recover without a reformation of the contract.   He states a cause of action at law and the difficulties in his way have nothing to do with the determination of the proper tribunal for the trial.

I agree with the views expressed in paragraph 2, and this dissent is limited to the question of the right to a jury trial.

WILSON, C. J. (dissenting.)
I concur in the dissent.