ROBERT K. LANDGRAF v. EDWARD C. ELLSWORTH,
d.b.a. ST. CLOUD RESTAURANT SUPPLY COMPANY.

126 N. W. (2d) 766.

February 21, 1964—No. 38,949.

*Blethen, Ogle, Gage & Krause,* for appellant.
*Lawrence M. Hall,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying plaintiff's motion for a new trial.

The litigation arises out of a dispute concerning commissions which plaintiff claims to have earned while employed by defendant.

Up to April 1956, Nash Finch Company owned and operated St. Cloud Restaurant Supply Company, which was engaged in selling and installing restaurant fixtures and equipment. Plaintiff was an employee of Nash Finch Company. The only written evidence of the terms of employment consists of a letter written by Nash Finch Company to plaintiff on January 23, 1954, which reads as follows:

"City of St. Cloud, Minnesota    January 23, 1954.

"Bob Landgraf:

"Dear Bob:

"Pursuant to our conversation regarding your working setup for this year, for salary and commissions, we were agreed that the condition would be as follows, viz: you are to retain your current drawing account plus expenses while away on a job as heretofor, however, you will receive the commission on jobs sold, such as bid jobs which will be your primary effort in 1954.

"On jobs sold out of the regular sales orbit of the Nash Finch Restaurant Supply you will receive a commission of 30% of the net profit of that job. That would take in such jobs as Chatfield, Winnebago, or any other outside jobs that you might be successful in obtaining.

"Jobs within the orbit of this sales organization, meaning strictly that we have a salesman on the territory and you get a bid job in this area, your commission will be 15% and the salesman gets 15% of the net profit as has been set up heretofor, this arrangement has been on the books for quite some time, in fact it was started back in Bert Anderson's days here. Obviously you will have to designate to the Accounting Department which jobs are 15% for the salesman and which ones aren't. For example if you should be successful in getting a State Bid in which the boys on a territory never have participated in that would also carry the 30% of the net profit.

"You will naturally carry on your normal activities which are required normally anyway under any conditions.

"The above seems to be everything necessary in this agreement because we all understand we have to do our normal jobs along with

the special jobs and we trust this meets with the approval of every-one concerned.

"Yours truly,
"Nash Finch Restaurant Supply,
"William Anderson."

In April 1956 defendant purchased this business from Nash Finch Company. Plaintiff continued to work for defendant on the same terms as he had been employed by Nash Finch Company, except that his monthly salary was increased from $275 to $300 per month. In addition to his monthly salary he was paid a commission of 30 percent of the net profit on jobs sold by him and his expenses, some of which were estimated and others itemized.

For his monthly salary, plaintiff was to act as general manager, which included the supervision of the business, sales over the counter, and a variety of other duties. He would prepare bids for the sale and installation of restaurant equipment to public and private purchasers and supervise the installation of the equipment; sometimes he even did the actual physical work of installing what he sold.

With respect to plaintiff's expenses, he would be reimbursed for those which he itemized, and on most of the jobs expenses involving promotion, advertising, and matters of that kind were estimated and charged as part of the cost of the job. With respect to such estimated expenses, he would customarily be paid 30 percent of the amount deducted.

On March 20, 1960, plaintiff quit his job. On that date, three jobs sold by him had been completely installed. There is no dispute that he was entitled to his commission on two of those jobs, and the court so found. The court found that there was no profit on one of these jobs. There were ten jobs sold by plaintiff at the time he quit which had not yet been installed. The main dispute on the merits relates to the right of plaintiff to be paid commissions on these jobs, it being his contention that he was entitled to commissions on the net profit of all jobs sold, whether they were installed or not. It is defendant's conten-tion that plaintiff was entitled to commissions only on the jobs sold and completed before he quit.

At the opening of the case, defendant moved the court that the case be tried without a jury, and, over the objection of plaintiff, this motion was granted. The court found that plaintiff was entitled to no commission as to all jobs that were not completed at the time he quit.

The principal questions involved here are whether plaintiff was entitled to a jury trial and whether the evidence sustains the court's findings as to the terms of the employment.

■ The right to a jury trial is derived from Minn. Const. art. 1, § 4, which provides:

"The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy, * * *."

In construing this constitutional provision in Breimhorst v. Beckman, 227 Minn. 409, 433, 35 N. W. (2d) 719, 734, we said:

"* * * The term 'all cases at law' refers to common-law actions as distinguished from causes in equity and certain other proceedings. Art. 1, § 4, preserves unimpaired the right of jury trial as it existed by the laws of the territory at the time our state constitution was adopted, and such right is thereby neither extended nor limited."[1]

■ Where a party has a constitutional right to a jury trial, denial of the right is reversible error.[2]

■ Our early cases seem to indicate that the complaint determines the nature of the action[3] and consequently the right to a jury trial. But the more recent cases hold and the correct view of the law is that the nature and character of the controversy, determined from all the pleadings, determine the right to a jury trial.[4]

---

[1]See, also, Morton Brick & Tile Co. v. Sodergren, 130 Minn. 252, 153 N. W. 527.

[2]Nordeen v. Buck, 79 Minn. 352, 82 N. W. 644; St. Paul & S. C. R. Co. v. Gardner, 19 Minn. 99 (132); Williams v. Howes, 137 Minn. 462, 162 N. W. 1049; W. T. Rawleigh Co. v. Shogren, 192 Minn. 483, 257 N. W. 102.

[3]Shipley v. Bolduc, 93 Minn. 414, 101 N. W. 952; Williams v. Howes, 137 Minn. 462, 162 N. W. 1049.

[4]Morton Brick & Tile Co. v. Sodergren, 130 Minn. 252, 153 N. W. 527;

In Gilbertson v. Independent School Dist. No. 1, 208 Minn. 51, 54, 293 N. W. 129, 130, we said:

"* * * Care should be taken not to permit any mere label which counsel in their pleadings attempt to put upon a lawsuit to result in the denial of the constitutional right to jury trial if the real nature of the action is such as to give a litigant that right."

■ A suit on a contract for the recovery of money is a legal action triable to a jury,[5] and the mere fact that there is an accounting incidental to the main action does not destroy the nature of the action or deprive a party of a jury trial.

The fact that plaintiff's prayer for relief in this case asks for an accounting is not conclusive in determining his right to a jury trial. In Bond v. Welcome, 61 Minn. 443, 63 N. W. 3, we said:

"If this is an action at law for the recovery of money only, the plaintiff is entitled absolutely to a trial by jury, although it involves the examination of a long account on either side, for the constitution guaranties to him this right."

■ This case is not too dissimilar to that of Wormsbecker v. Donovan Const. Co. 247 Minn. 32, 76 N. W. (2d) 643, where we held that a determination of what the agreement was between the parties presented a fact question triable by a jury as a matter of right. The same is true here.

It has been held that Amendment VII of the United States Constitution applies only to Federal and not to state action.[6] However, determination of the right to a jury trial under the facts of this case would be much the same under either the Federal or state constitution. One of

---

Swanson v. Alworth, 168 Minn. 84, 209 N. W. 907; Coughlin v. Farmers & Mechanics Sav. Bank, 199 Minn. 102, 272 N. W. 166.

[5]Raymond Farmers Elev. Co. v. American Surety Co. 207 Minn. 117, 290 N. W. 231, 126 A. L. R. 1351.

[6]Minneapolis & St. L. R. Co. v. Bombolis, 241 U. S. 211, 36 S. Ct. 595, 60 L. ed. 961 (affirming Bombolis v. Minneapolis & St. L. R. Co. 128 Minn. 112, 150 N. W. 385); Stein v. New York, 346 U. S. 156, 73 S. Ct. 1077, 97 L. ed. 1522; see, also, Richie v. Badger State Mutual Cas. Co. 22 Wis. (2d) 133, 125 N. W. (2d) 381.

the best discussions of this question may be found in Dairy Queen, Inc. v. Wood, 369 U. S. 469, 477, 82 S. Ct. 894, 899, 8 L. ed. (2d) 44, 51, where the court said:

"* * * [W]e think it plain that their claim for a money judgment is a claim wholly legal in its nature however the complaint is construed. As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character. * * *

"The respondents' contention that this money claim is 'purely equitable' is based primarily upon the fact that their complaint is cast in terms of an 'accounting,' rather than in terms of an action for 'debt' or 'damages.' But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings. The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, * * * the absence of an adequate remedy at law. Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them. In view of the powers given to District Courts by Federal Rule of Civil Procedure 53 (b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met. * * * A jury, under proper instructions from the court, could readily determine the recovery, if any, to be had here, whether the theory finally settled upon is that of breach of contract, that of trademark infringement, or any combination of the two. The legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records."

Rule 53.02 of our Rules of Civil Procedure is identical with Rule 53(b) of the Federal rules.[7]

---

[7]See, 3 Youngquist & Blacik, Minnesota Rules Practice, Authors' Comments to Rule 53.02, p. 8.

For a further discussion of the question of when an action involving an accounting becomes equitable so as to be triable without a jury, see Berry Seed Co. v. Hutchings, 247 Iowa 417, 74 N. W. (2d) 233; Lindner v. Starin, 128 App. Div. 664, 113 N. Y. S. 201; 1 Pomeroy, Equity Jurisprudence (5 ed.) § 178.

Defendant relies for the most part on Swanson v. Alworth, 168 Minn. 84, 209 N. W. 907. That decision was by a divided court, three to two. It has been criticized in 11 Minn. L. Rev. 452. If it is to be retained, it can be readily distinguished on the facts. We there held that the contract involved evidenced something in the nature of a partnership or joint venture, involving a fiduciary relationship between the parties. The majority opinion said (168 Minn. 91, 209 N. W. 909):

"* * * That his action is for the recovery of money only does not prevent its being equitable. There is a fiduciary relation and a duty resting upon Alworth to account for the plaintiff's share of the profits. There are no mutual accounts between the two, but that does not prevent the action being equitable. Upon a somewhat prolonged consideration we conclude that there was no right to jury trial."

In contrast, we have cases such as Fist v. The O-Zell Co. 153 Minn. 294, 190 N. W. 260, which involved an arrangement similar to the one now before us. The case was submitted to a jury, and on appeal we held that it was properly so submitted.

An examination of our cases and those elsewhere can lead to no conclusion but that the case involved here was one triable by a jury. There is nothing difficult about the accounting that may become necessary once the fact issues are determined. The main fact issue on the merits will involve a determination of what the agreement between the parties was. That is true in many cases, and, once that issue is settled, the amount due plaintiff, if anything, will not involve such a complicated accounting that a jury could not handle it.

Under our Rules of Civil Procedure it is now discretionary with the trial court whether to submit a case to the jury on a general or special verdict. Prior to the adoption of our rules this was not true.[8] It is

---

[8] Roske v. Ilykanyics, 232 Minn. 383, 45 N. W. (2d) 769.

even possible under Rule 53.02 to submit the accounting to a referee if it is so complicated that it cannot be handled by a jury, but that does not deprive a party of the right to a jury trial on the main fact issues.

It is clear to us that plaintiff was entitled to a jury trial and that a denial of that right is reversible error.

For other cases involving the determination of issues similar to the one now before us, see Monroe v. Grolier Society, 208 Cal. 447, 281 P. 604, 65 A. L. R. 989; James A. Head & Co. v. Rolling, 265 Ala. 328, 90 So. (2d) 828.

In an Annotation in 65 A. L. R. 993, the author states:

"The question of the right of a person employed under a contract providing for commissions based upon amount collected, to commissions on collections made after termination of the employment or discharge for cause, where the collections arise out of business secured during the term, is almost entirely dependent upon the wording of the particular contract involved and the construction to be given thereto."

Where the parties deal so informally with each other that it cannot be determined from the written instrument alone what their agreement was, the usual procedure is to determine from all the evidence what contract they intended to have.

There is one item involved in this case which, in the light of the fact that there must be a new trial, may warrant some discussion even though what we say is purely dictum. Plaintiff claims to be entitled to recover 30 percent of the unitemized expenses charged against each job. These expenses usually involved amounts paid out during the course of the completion of the contract for entertainment, advertising, and matters of like nature that would lead to the establishment of good will. The share paid to plaintiff was not accounted for in his income tax return, which would lead one to believe that what he received was considered to be reimbursement for the part of these expenses which he had paid out of his own pocket. It may well be that on contracts completed by plaintiff he paid out such expenses and was reimbursed for them, whereas when he terminated his employ-

ment he did not continue to make such payments and would not be entitled to reimbursement. The question here, it seems to us, is whether the payment of this item was intended as reimbursement for something plaintiff had paid out and, if so, whether he is now entitled to any such reimbursement without a showing of what he has actually paid. We simply mention this item in passing for the reason that it might avoid a further appeal once the case is tried again.

Reversed and new trial granted.