**UNITED PRAIRIE BANK–MOUNTAIN LAKE, Respondent,**

v.

**HAUGEN NUTRITION & EQUIPMENT, LLC, et al., Appellants.**

No. A09–607.

Court of Appeals of Minnesota.

May 11, 2010.

Samuel L. Hanson, Charles B. Rogers, Jason R. Asmus, Briggs and Morgan, P.A., Minneapolis, MN, for respondent.

John E. Mack, Mack & Daby, P.A., New London, MN, for appellants.

Considered and decided by MINGE, Presiding Judge; SCHELLHAS, Judge; and BJORKMAN, Judge.

## OPINION

BJORKMAN, Judge.

Appellants challenge the district court's order awarding respondent bank attorney fees incurred in a lawsuit initiated to protect the bank's claim to property and in a

separate foreclosure action. Appellants argue that the district court erred by failing to grant them a jury trial, awarding excessive fees, dismissing their claim for punitive damages, and distributing monies deposited with the court in lieu of a supersedeas bond to the bank. We affirm.

## FACTS

Appellants Ilene and Leland Haugen owned two parcels of land in Cottonwood County (the real property), on which they farmed and ran a feed mill business, Haugen Feeds, Inc. In 2002–2003, the Haugens and Haugen Feeds defaulted on loans they obtained from First Security Bank of Canby and The Prudential Insurance Company of America. In May 2003, the Haugens met with Theodore Devine, a vice president and loan officer at respondent United Prairie Bank (UPB), about refinancing their debt. Devine informed the Haugens that UPB would not loan them money, but he proposed an alternate plan in which the Haugens would transfer nearly all of their assets to an unrelated third party and then buy the property back through a newly created entity. For this purpose, the Haugens created appellant Haugen Nutrition and Equipment, LLC (HNE).[1] Devine suggested his friend, Mark Sahli, as the buyer.

In the subsequent series of transactions, Sahli received loans from UPB to purchase the Haugens' assets and real property. The Haugens used the funds from the asset sales to pay off their existing debt at a significantly reduced cost. HNE then purchased the assets from Sahli with loans from UPB: HNE paid cash for the moveable assets and obtained the real property through a contract for deed. In exchange for these loans, HNE gave UPB promissory notes secured by these assets and a mortgage on the real property.[2] The Haugens signed personal guarantees for all the notes.

All of the loan-related documents permit UPB to recover costs, including attorney fees, associated with collection efforts. The promissory notes obligate HNE to "pay all costs of collection, replevin . . ., or any other similar type of cost if I am in default." The notes define default to include, among other things, (1) "[failing] to make a payment on time or in the amount due," (2) doing or "[failing] to do something which causes [UPB] to believe that [UPB] will have difficulty collecting the amount I owe [UPB]," and (3) situations where a legal authority threatens to confiscate the collateral. The security agreements attached to these notes expressly entitled UPB to recover "reasonable attorneys' fees and legal expenses" incurred in enforcing appellants' payment obligation. And the personal guarantees similarly provide: "The Undersigned will pay or reimburse Lender for all costs and expenses (including reasonable attorney fees and legal expenses) incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation or bankruptcy or insolvency proceeding."

The mortgage securing one of the notes permits UPB to recover attorney fees incurred in any action taken to protect or preserve its interest in the real property.

---

1. From this point forward, "appellants" will refer to Ilene and Leland Haugen and the entity HNE. "Haugens" will refer to Ilene and Leland Haugen as individuals.

2. There were three promissory notes: two from HNE to UPB and one from Ilene Haugen to UPB. All were secured by the same moveable assets. The larger of the notes from HNE to UPB was also secured by a mortgage on the real property. All three notes are collectively referred to as "the notes" or "the promissory notes" throughout the remainder of the opinion.

Finally, the contract for deed under which Sahli transferred the real property to HNE includes a clause holding HNE responsible for attorney fees that Sahli (and later UPB) incurs in removing liens or adverse claims against his interest in the property.

*The Meadowland action*

After all of the Haugens' former assets had been transferred to HNE, Meadowland Farmers Coop (Meadowland) sued the Haugens, HNE, and UPB. Meadowland had previously obtained a judgment against Leland Haugen and Haugen Feeds, and alleged in its complaint that the loans and sales to Sahli and HNE were fraudulent and "intended to put assets of the Judgment Debtors in other related entities under the control of [the Haugens] and beyond the reach of Meadowland." The parties eventually settled Meadowland's claims in a manner that left the security agreements between HNE and UPB intact.

*The current action*

HNE failed to make the balloon payment due to Sahli at the end of the first year under the contract for deed. That left Sahli unable to repay his own debt to UPB. As a result, Sahli transferred title to the real property and the contract for deed to UPB.

On May 2, 2005, UPB commenced this action seeking recovery of $347,496.79 due under the contract for deed, with interest accruing at the rate of $101.84 per diem. UPB also sought to foreclose on the property, requesting a judgment that it is entitled to immediate possession of all collateral covered by the security agreements and that it is the fee owner of the real property under the contract for deed, or, alternately, cancellation of the contract for deed.

Appellants asserted ten counterclaims, all of which were ultimately dismissed. In the course of litigating the counterclaims, three primary issues emerged: (1) whether UPB could foreclose on the properties (foreclosure claim); (2) whether the contract for deed should be considered an equitable mortgage (contract-for-deed claim); (3) and whether UPB was entitled to recover attorney fees incurred in the Meadowland action and in the present case. The parties agreed to try the foreclosure and contract-for-deed claims to the court. The district court denied appellants' motion for a jury trial on the attorney-fees issue.

The district court determined on summary judgment that the contract for deed was not an equitable mortgage and that UPB could foreclose on the property. On appeal, this court concluded that the district court erred by resolving fact issues on summary judgment and remanded. *United Prairie Bank v. Haugen Nutrition & Equip., LLC,* Nos. A06–722, A06–868, 2007 WL 1470219, at *4 (Minn.App. May 22, 2007).

During the pendency of the first appeal, the district court ordered appellants to post a $75,000 bond to cover the rental value of the real property during their continued occupation pursuant to Minn. Stat. § 504B.371, subd. 3(3) (2006), and Minn. R. Civ.App. P. 108.01. The Haugens' son, who was renting the real property from the Haugens, deposited $75,000 in cash into court. The district court issued a similar order on March 28, 2007, requiring an additional $40,000 deposit, which the son also made.

On remand, the district court granted UPB's motion to retain the deposited funds. The district court found that appellants were indebted to UPB in excess of the $115,000 on deposit with the court, and that the debt was the subject of the litigation. Accordingly, the district court retained the funds "pending the conclusion of

this lawsuit pursuant to Minn. R. Civ. P. 67.04." The Haugens' son deposited another $60,000 into court in 2008.

 As to the merits of UPB's claims, the district court determined that the contract for deed was an equitable mortgage. But this decision only affected the terms of the foreclosure: the district court ordered foreclosure on all assets secured under the security agreements and mortgage.[3]

With respect to UPB's claimed attorney fees, the district court determined UPB was entitled to recover fees expended in "preserv[ing] and protect[ing] its security interests in hogs, machinery and equipment and Real Property" in the Meadowland action, and found that $117,110.24 is a reasonable amount. The district court held that UPB could not recover attorney fees it expended in litigating the contract-for-deed issue because the terms of the contract for deed only allow recovery of attorney fees incurred in removing liens or adverse claims against the property. But the district court determined that the security agreements and the mortgage securing the promissory notes permit recovery of attorney fees related to UPB's foreclosure claim. The court determined that $606,575.92 remained owing on the notes, including $286,711.58 in reasonable attorney fees.

The district court further ruled that UPB is entitled to all of the deposited funds as the rental value of the real property during the pendency of the litigation. The district court directed that these funds be applied against the foreclosure payments.

Appellants moved for a new trial on the grounds that the district court erred in failing to grant a jury trial on the attorney-fees issue and that the fee award is excessive. The district court denied the motion. This appeal follows.

### ISSUES

I. Did the district court commit reversible error in denying appellants' request for a jury trial on the attorney-fees issue?

II. Did the district court abuse its discretion as to the amount of attorney fees awarded to UPB?

III. Did the district court err in dismissing appellants' counterclaims and punitive-damages claim?

IV. Did the district court err in awarding the money deposited into court to UPB?

### ANALYSIS

**I. The district court did not commit reversible error in denying appellants' request for a jury trial on the attorney-fees issue.**

 Denial of a constitutional right to a jury trial is reversible error. *Landgraf v. Ellsworth,* 267 Minn. 323, 326, 126 N.W.2d 766, 768 (1964). We review the interpretation and application of the Minnesota Constitution de novo. *Olson v. Synergistic Tech. Bus. Sys.,* 628 N.W.2d 142, 148 (Minn.2001).

 The Minnesota Constitution provides that "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount

---

**3.** If an arrangement is an equitable mortgage, the mortgagor (HNE) has title to the property, has a right to redeem the property after foreclosure, and has a right to the proceeds of the sale that exceed the amount of indebtedness. *Sitek v. Striker,* 764 N.W.2d 585, 594 (Minn.

App.2009). Under a contract for deed, UPB would hold title to the land, and the vendee (HNE) forfeits all payments made on the property, and full legal and equitable title may be restored in the vendor in as few as 60 days of serving notice. *Id.*

in controversy." Minn. Const. art. I, § 4. This provision recognizes and is intended to continue the right of a trial by jury "as it existed in the Territory of Minnesota when our constitution was adopted in 1857." *Abraham v. County of Hennepin,* 639 N.W.2d 342, 348 (Minn.2002).

■ To the extent a particular claim was not recognized in Minnesota's territorial courts, we look beyond the label applied to the cause of action, focusing on whether "[t]he nature and character of the controversy, as determined from all the pleadings and by the relief sought" indicates that "the cause of action is one at law *today.*" *Id.* at 349. The fact that a party seeks only the recovery of money does not, in and of itself, determine whether the party is entitled to a jury trial. *Swanson v. Alworth,* 168 Minn. 84, 90, 209 N.W. 907, 909 (1926).

In *Olson,* the supreme court held that although the plaintiff sought only monetary relief, her case sounded in promissory estoppel, an equitable remedy both historically and at present, and no jury-trial right attached. *Olson,* 628 N.W.2d at 153. Likewise, in *Abraham,* the supreme court looked beyond the fact that the plaintiff sought only monetary relief for her employer's alleged violation of the whistleblower act. 639 N.W.2d at 348. Noting that the statutory claim was for wrongful discharge, the court reasoned that it sounded in tort. *Id.* at 353. Because Abraham was not seeking equitable relief under the act, the supreme court concluded that his action was at law and that he was entitled to a jury trial. *Id.* at 354.

Appellants argue that because their attorney-fees claim flows from breach of contract, it presents a legal issue, entitling them to a jury trial. UPB acknowledges that breach of contract is a legal claim, but argues that attorney fees recoverable under a contract do not implicate traditional contract-breach principles. UPB asserts that there was no action at common law to recover attorney fees available under a contract and that appellants' claim is equitable in nature.

Whether recovery of attorney fees under a contract in connection with enforcement efforts presents a legal or equitable claim is an issue of first impression in Minnesota. But several federal courts have addressed the issue under the United States Constitution using analysis similar to that employed by the Minnesota Supreme Court in *Olson* and *Abraham.* Because the United States and Minnesota Constitutions contain the same jury-trial guarantee, federal interpretations of the Seventh Amendment are persuasive precedent. *See Landgraf,* 267 Minn. at 327, 126 N.W.2d at 769 ("[D]etermination of the right to a jury trial under the facts of this case would be much the same under either the Federal or state constitution.").

■ To determine whether a party is entitled to a jury trial under the Seventh Amendment, federal courts look to the "nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). The nature of the issue is determined by considering (1) how the issue was customarily treated prior to the merger of the courts of law and equity (the "pre-merger" custom), (2) the remedy sought, and (3) the abilities and limitations of juries. *Id.* at 538 n. 10, 90 S.Ct. at 738 n. 10. Using this rubric, federal courts have determined that there is no right to a jury trial to recover attorney fees under the circumstances present in this case.

When considering the first prong of the *Ross* analysis, federal courts have concluded that pre-merger custom did not view attorney fees as an issue to be decided by

a jury. In *Kudon v. f.m.e. Corp.*, a lessee of postal meters sued the lessor for tortious interference with contractual relations with the U.S. Postal Service related to lessor's attempt to repossess the meters based on lessee's default. 547 A.2d 976, 978 (D.C.1988). The lessor counterclaimed and sought to recover attorney fees related to its enforcement efforts, as allowed under the lease. *Id.* The *Kudon* court analyzed the historical development of attorney-fees claims, concluding that attorney fees and costs "have traditionally been viewed as a determination to be made by the court rather than by a jury." *Id.* at 979.

Similarly, in *Resolution Trust Co. v. Marshall*, plaintiff sued to collect on a promissory note and to recover attorney fees related to his collection efforts pursuant to a guaranty agreement that accompanied the note. 939 F.2d 274, 275–76 (5th Cir.1991). In affirming the denial of defendant's jury-trial request, the Fifth Circuit held that "[s]ince there is no common law right to recover attorneys fees, the Seventh Amendment does not guarantee a trial by jury to determine the amount of reasonable attorneys fees." *Id.* at 279.

On the second prong of the *Ross* analysis, the *Kudon* court determined that an award of attorney fees authorized by a private contract provision is in the nature of an equitable remedy. 547 A.2d at 979. Citing a number of cases, the court compared claims for attorney fees authorized by contract to other reimbursement claims, that are equitable in nature, because the contract essentially provides for reimbursement of litigation costs. *Id.* (citing *A.G. Becker–Kipnis & Co. v. Letterman Commodities, Inc.*, 553 F.Supp. 118, 123 (N.D.Ill.1982); *Cheek v. McGowan Elec. Supply Co.*, 511 So.2d 977, 979 (Fla. 1987)). Other courts have reasoned that attorney fees are equitable because they are more restitutionary than compensatory and are collateral to the contract issue. *A.G. Becker–Kipnis*, 553 F.Supp. at 124; *see also Redshaw Credit Corp. v. Diamond*, 686 F.Supp. 674, 676–77 (E.D.Tenn. 1988). In *Redshaw*, the court determined that a claim for attorney fees available to enforce a contract was equitable in nature because it was "collateral" to the issue on the merits of the contract claim. 686 F.Supp. at 676–77. The court held that "the issues of liability for attorneys' fees and the reasonableness of any such award should be addressed separately from liability on the merits." *Id.*

As to the third *Ross* prong, courts agree that "the question of what constitutes a reasonable attorneys' fee, although not entirely incapable of jury resolution, is one better left for the court." *Kudon*, 547 A.2d at 979. Submitting fees to the court at the end of a trial is considered to be a better practice because judges "are better equipped than juries to make computations based on details about billing practices," and because, where only the prevailing party is allowed fees, it is efficient to wait until after the verdict to submit proof of fees. *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1316 (2d Cir.1993).

Applying the analysis of *Olson, Abraham,* and *Ross* leads us to conclude that appellants do not have a right to a jury trial on the issue of attorney fees. It is undisputed that claims for recovery of attorney fees under a contract did not exist in the territorial courts of Minnesota, so we look to "the nature and character of the controversy, as determined from the pleadings and by the relief sought." *Abraham*, 639 N.W.2d at 350. The thrust of UPB's complaint is to compel appellants to perform under the various contracts or to obtain damages occasioned by appellants' breach. UPB is entitled to reimbursement of its attorney fees only if it demonstrates

that appellants have defaulted under the terms of the contract. This reimbursement claim is more like a claim for restitution than for compensation. *See A.G. Becker–Kipnis,* 553 F.Supp. at 124. In some respects, UPB's attorney-fees claim is akin to a request for specific performance of a contract, for which a jury trial is not required. *See Indianhead Truck Line, Inc. v. Hvidsten Transp., Inc.,* 268 Minn. 176, 193, 128 N.W.2d 334, 346 (1964) (explaining that a demand for payment of monetary penalties allowed by contract is a request for specific performance, and although specific performance is an equitable remedy, "award of [monetary] damages was within the power of the court of equity").

■ Moreover, we are persuaded by the federal precedent that resolution of attorney-fees claims is best left to the courts. The courts have experience and expertise in determining the reasonableness of fees, including the necessity of the services and appropriate billing rates. Submissions of these questions to juries could create delay and compromise efficiency. And recoverable attorney fees would continue to accrue during and after trial, making resolution by a jury difficult, if not impossible. Finally, we note that there is no history in Minnesota of turning such fee determinations over to juries. We decline to create such a requirement.

Appellants urge us to reach a different decision in accordance with *Simplot v. Chevron Pipeline Co.,* 563 F.3d 1102 (10th Cir.2009). *Simplot* involved the sale of a business and an agreement between the parties that the seller would continue to manage ongoing litigation involving the business after the sale. 563 F.3d at 1106. Seller failed to do so. At the close of that litigation, the purchaser sued the seller to recover the attorney fees purchaser incurred in the litigation. *Id.* at 1107. The district court denied seller's request for a jury trial on the attorney-fees claim. *Id.* at 1108. The Tenth Circuit reversed, expressly distinguishing its holding from that of *Resolution Trust* and similar cases: "here Simplot's attorneys' fees and costs are *themselves* part of the merits of their contract claim" and not "collateral to and separate from the decision on the merits." *Id.* at 1115–16.

We consider *Simplot* inapposite based on this significant distinction. Where the contract breach is premised on an obligation to provide a legal defense, attorney fees are the direct consequence of the breach and the measure of damages. Where, as here, the substance of the contract claim is nonpayment of a promissory note, the damages directly caused by nonpayment is the balance due under the note: the issue of fees is collateral.[4] For the reasons stated above, we hold that appellants were not entitled to a jury trial on their attorney-fees claim.

## II. The district court did not abuse its discretion in its attorney-fees award.

■ At trial, UPB claimed entitlement to $745,020.01 in attorney fees. The district court found UPB's expert's calculations to be credible and accurate. The district court awarded $117,110.24 for fees related to the Meadowland action, and $286,711.58 for fees related to the foreclosure claim.[5]

---

4. Other courts have made similar distinctions. *See Continental Bank, N.A. v. Everett,* 861 F.Supp. 642, 645 (N.D.Ill.1994) ("For Seventh Amendment purposes there is a distinction between attorneys' fees as the measure of damages in an action in contract and attorneys' fees as a post-judgment remedy to be awarded to the prevailing party.").

5. Appellants' reference to $606,575.92 as the total of the fees awarded is incorrect. The

The district court did not award fees related to the contract-for-deed claim, which UPB's expert calculated at $341,198.19.

Appellants contest the reasonableness of these fees, arguing that (1) the fees are excessive in relationship to the underlying debt; (2) the fees incurred in the Meadowland action are not recoverable; (3) UPB is not entitled to recover fees related to its unsuccessful motions and collection attempts in the foreclosure claim; and (4) the amount of the fees should have been based on the local, Cottonwood County rate and not on rates charged in the Twin Cities. These arguments are unavailing.

We review an award of attorney fees under an abuse-of-discretion standard. *Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 620 (Minn.2008). A court's award of attorney fees may be based on its observation of the services performed or proof of their value. *Aesoph v. Golden*, 367 N.W.2d 639, 642 (Minn.App.1985).

Appellants argue that attorney fees are not available under the security agreements because they were not in default at the time of the Meadowland litigation. We disagree. The security agreements broadly define default to include anything that "either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property." The Meadowland action challenged the validity of the transactions between HNE and UPB. If successful, Meadowland would have invaded HNE's assets thereby compromising UPB's ability to collect on its notes and impairing the value of the property. Accordingly, we conclude that the Meadowland litigation constituted an event of default under the security agreements between HNE and UPB.

Appellants' assertion that the fee award is excessive because UPB did not prevail in all aspects of the litigation also fails. "Where a plaintiff succeeds on only some claims and fails on others, two questions must be addressed: whether the unsuccessful claims were related to the successful claims, and whether the plaintiff's level of success makes the hours expended a satisfactory basis for making the fee award." *Musicland Group, Inc. v. Ceridian Corp.*, 508 N.W.2d 524, 535 (Minn.App. 1993), *review denied* (Minn. Jan. 27, 1994). Fees not related to successful *claims* should not be granted, but each motion in pursuit of a claim need not be successful. *Id.* Here, the district court distinguished between the two main claims in this litigation: contract for deed and foreclosure. The district court disallowed fees related to the first, on which UPB was unsuccessful, and allowed fees on the second, on which UPB prevailed. Even though some of UPB's motions with respect to foreclosure were unsuccessful, UPB ultimately prevailed on its foreclosure claim. All of UPB's motions were based on an interrelated set of facts. The district court did not abuse its discretion in awarding all attorney fees related to this claim.

Finally, we find no legal basis for appellants' argument that the district court should have considered attorney billing rates in Cottonwood County rather than the Twin Cities in determining the reasonableness of UPB's fees. The only support for this argument is found in civil-rights cases, where use of the local prevailing rate is mandated by federal statute. *See Reome v. Gottlieb*, 361 N.W.2d 75, 77–78 (Minn.App.1985) (explaining the calculation of fees in civil-rights cases under 42 U.S.C.

district court awarded this amount for HNE's breach of the two promissory notes. This includes principal and interest on the notes, and $286,711.58 in attorney fees.

§ 1988 (1982)). Ordinarily, in determining the reasonableness of fees, courts must consider "the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client." *Milner*, 748 N.W.2d at 621. The district court considered those factors here. UPB submitted hourly billing records to the court and had the records reviewed by an independent expert, who also submitted a report to the court. On this record, we discern no abuse of discretion.

## III. The district court did not err in dismissing appellants' counterclaims and request for punitive damages.

When reviewing an issue that has been dismissed for failure to state a claim on which relief can be granted, we consider whether the complaint sets forth a legally sufficient claim for relief. *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn.2008). We review the dismissal de novo, accepting the facts in the complaint as true and construing all reasonable inferences in favor of the nonmoving party. *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn.2003).

Appellants counterclaimed for conversion and unjust enrichment against Devine and UPB. In the late summer and early fall of 2004, Devine allegedly withdrew approximately $22,000 of funds from the Haugens' account at UPB. Of this amount, $11,000 allegedly went to Sahli, and the location of the remaining $11,000 is unknown. Appellants claim that Devine and UPB converted and were unjustly enriched by these funds.

The district court dismissed these claims as a matter of law, stating that appellants' only remedy was in contract. Citing *Halla v. Norwest Bank of Minn.*, 601 N.W.2d 449, 453 (Minn.App. 1999), *review denied* (Minn. Dec. 14, 1999), the district court held that once funds are deposited into a bank, they become the property of the bank, so conversion cannot lie.[6] We agree. And the district court was also correct in dismissing appellants' unjust-enrichment claims because "proof of an express contract precludes recovery in quantum meruit." *Sharp v. Laubersheimer*, 347 N.W.2d 268, 271 (Minn.1984) (equating recovery in quantum meruit to an unjust-enrichment theory).

Appellants also challenge the denial of their punitive-damages claim against UPB based on Devine's actions. A claim for punitive damages is not an independent claim. Minn.Stat. § 549.20 (2008). And punitive damages cannot be based on a breach of contract. *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 561 (Minn.1996). The district court did not err in dismissing appellants' counterclaims and there is no other basis for awarding punitive damages.

## IV. The district court did not err in awarding the monies on deposit with the court to UPB.

On appeal, we give great deference to a district court's findings of facts, and they will not be set aside if there is reasonable evidence to support them. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999). Interpretation of the rules of civil procedure presents questions of law, which this court reviews de novo. *Barrera v. Muir*, 553 N.W.2d

---

**6.** Appellants acknowledge that conversion may not technically be the correct remedy.

104, 108 (Minn.App.1996), *review denied* (Minn. Oct. 29, 1996).

Appellants argue that the money deposited into court belonged to the Haugens' son, who is not a party to this action, and that it should be returned to him. Appellants also argue that UPB is essentially seeking an illegal prejudgment attachment on the rents. UPB asserts that these funds were deposited as rent, and that the security agreements grant UPB "[a]ll rights to payment" including rent.

At the outset, it appears to us that the district court permitted the deposited money to supersede the judgment that was the subject of the first appeal because UPB was prevented from exercising ownership of the property. When the district court later determined that appellants maintained equitable title to the real property, the court ordered that the funds remain on deposit, pursuant to Minn. R. Civ. P. 67.03, since the debt at issue totaled more than the $175,000 deposited. Rule 67.03 provides:

> When it is admitted by the pleading or examination of a party that the party has possession or control of any money or other thing capable of delivery which, being the subject of the litigation, is held by that party as trustee for another party, or which belongs or is due to another party, the court may order the same to be deposited in court or delivered to such other party, with or without security, subject to further direction.

The district court order made the required rule 67.03 findings, including that Leland Haugen deposited the funds with the court administrator, that the money was in Leland Haugen's possession and control at the time it was deposited, that appellants are currently indebted to UPB in an amount greater than the deposit, and that the debt is the subject of the litigation.

Appellants' challenge to the finding that Leland Haugen had control of the funds at the time of deposit also fails. Our review of the record reveals no clear error. There is sufficient evidence on which the district court could have based its factual determination, including a check submitted to the court clerk drawn from Leland Haugen's account. Because the order directing deposit of the funds into court was authorized under Minn. R. App. P. 108.02 and Minn. R. Civ. P. 67.03, appellants' argument that the order violated the prejudgment attachment statute, Minn.Stat. § 570.025 (2008), fails. Accordingly, we conclude that the district court did not err in awarding the deposited funds to UPB.

## DECISION

We hold that the Minnesota Constitution does not guarantee a jury trial for recovery of attorney fees that are collateral to a contract. And we conclude that the district court did not abuse its discretion in determining the amount of the fees awarded or in awarding UPB the monies on deposit with the court.

**Affirmed.**